[No. C051646. Third Dist. Aug. 31, 2006.]

DONALD R. JOHNSON, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
SETH A. ROSENTHAL et al., Real Parties in Interest.

298

**COUNSEL**

Steven M. McCarthy for Petitioner.

No appearance for Respondent.

Wilke, Fleury, Hoffelt, Gould & Birney and Danielle M. Guard for Real Parties in Interest.

**OPINION**

**BLEASE, Acting P. J.**—Respondent, Superior Court, granted the summary judgment motion of defendants and real parties in interest, Seth A. Rosenthal and Mark A. Leibenhaut in the medical malpractice action filed by plaintiff and petitioner, Donald R. Johnson.[1] The trial court granted the summary judgment motion because it found plaintiff's expert declaration in opposition to the motion was "patently inadequate" and it refused to consider a late-filed amended declaration.

Plaintiff filed this action for a writ of mandate. We granted an alternative writ and stayed the proceedings. We shall conclude that defendants' expert declaration was insufficient to establish facts from which a reasonable trier of fact would find the defendants acted within the standard of care. Therefore, even if plaintiff's expert declaration was inadmissible, defendants were not entitled to summary judgment.

We will issue a peremptory writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's complaint alleged the following pertinent facts. Plaintiff was diagnosed with prostate cancer, and in January 1999 was treated for that

---

[1] We shall hereafter refer to real parties in interest as defendants and petitioner as plaintiff.

condition by the implantation of radioactive material in his prostate gland. His doctors, including defendants, negligently examined, diagnosed, treated, and cared for him by implanting or causing to be implanted an excessive amount of radioactive material. As a result, his surrounding tissues and organs were badly damaged, necessitating a colostomy, bladder removal, and other related procedures. Also as a result, he has suffered great physical and emotional pain.

Defendants filed a motion for summary judgment.[2] The declaration of Dr. Kent Wallner, a radiation oncologist, was filed in support of the motion. Dr. Wallner identified the records he had reviewed and stated: "On September 2, 1999, Plaintiff had an ultrasound of his prostate. Thereafter, plans were made on where and how many radioactive seeds should be placed. The implantation plan was created by DR. ROSENTHAL. DR. LEIBENHAUT, another radiation oncologist, reviewed the plan and agreed with DR. ROSENTHAL's calculation. The plan was within the standard of care at the time. . . ." The plan involved the implantation of 117 radioactive seeds. However, that dose was increased to 125 seeds during the actual implantation. As to this Dr. Wallner stated: "Plaintiff had a post-procedure check of the seeds done on November 11, 1999. The results showed an adequate dosage. The implantation was within the standard of care for the time."

Dr. Wallner further explained that plaintiff developed a rectal fistula from the radiation, and that he ultimately required a colostomy and resection of the anus, rectum, and colon, and removal of the bladder. Dr. Wallner opined that the rectal fistula was not indicative of medical negligence, and that plaintiff "suffered a known, but rare, outcome of a procedure that was planned, performed and monitored properly and within the standard of care at the time of the treatment."

Plaintiff's opposition to the summary judgment motion included the declaration of his expert, Dr. Owen Kim. Dr. Kim stated he was a physician licensed to practice medicine in California, and was the medical director of the Roger S. Good Cancer Treatment Center in Porterville, California. However, the declaration did not state where it was signed, and purported to be merely under penalty of perjury rather than under penalty of perjury under the laws of the state of California. He stated he was a "Diplomat of the American Boards of Radiology, Hospice, and Palliative Medicine." The

---

[2] Two other defendants have been named, but only Drs. Rosenthal and Leibenhaut filed this motion for summary judgment.

declaration claimed to include an attached curriculum vitae, but none was attached.

Dr. Kim also made the following statements:

"2. I have reviewed the relevant medical records of Donald Johnson. Based on these, there was clear negligence involved in the implantation procedure of 9/30/99. The prostate volume was estimated to be 36.3 cc via pre-op measurement using ultrasound studies. 41.46 mCis were planned to be implanted which is significantly higher than the recommendation of 34.52 mCis according to 1999 NIST Standard.

"3. Inexplicably, Mr. Johnson was implanted with extra seeds to receive 44.8 mCis at the time of operation, with the very predictable result of severe rectal and urethral injuries.

"4. The post plan studies showed quite clearly that the rectum received far more than the recommended upper safe limit—as much as twice—in parts of the rectum. What appears to be only a small increase in the overall activity number implanted (44.8 from what should have been 34.52) actually has a significant exponential increase in both the dose and the biological effect of tissues.

"5. In summary, there were too many radioactive seeds planned for the volume of prostate, and without any good explanation noted on operative note[s] or elsewhere; the patient was implanted with extra seeds exceeding the already excessive dose planned for this patient."

Plaintiff also submitted a declaration in opposition to the motion. In it, he testified to the devastating effect of his injuries, noting he had to undergo a "colostomy and urostomy and live the rest of my life as I do with two bags for those procedures, the leakages, the infections, the herniations, dehydration, and the like . . . ." He also described that by the one-year anniversary of the procedure, he was in constant pain and taking six to eight Vicodin pills each day. That dosage was later increased. He stated that on the second anniversary of the procedure, "my innards were still so damaged that I was urinating through my rectum."

Plaintiff objected to Dr. Wallner's declaration on various grounds, including that it lacked foundation and contained legal conclusions.

In reply to the opposition, defendants argued Dr. Kim's declaration was insufficient because it failed to comply with Code of Civil Procedure section 2015.5,[3] failed to properly qualify Dr. Kim as an expert with the requisite knowledge to offer an expert opinion, failed to establish a foundation for the opinion, and failed to provide any evidence on the issue of the standard of care.

Apparently in response to the concerns raised in the reply, plaintiff filed an amended declaration of Dr. Kim, which added certain information. Dr. Kim declared he was a "radiation oncologist with substantial brachytherapy[4] experience." Rather than simply stating he had reviewed plaintiff's relevant medical records, he added that the records he reviewed had been provided by Dr. Rosenthal and others. He stated there had been a failure of the standard of care in the implantation procedure. Finally the declaration was made "under penalty of perjury under the laws of the State of California[.]" The amended declaration was not filed until two days before the date of the hearing on the motion. Section 437c, subdivision (b)(2) requires opposition papers to be "served and filed not less than 14 days preceding the noticed or continued date of hearing, unless the court for good cause orders otherwise."

At the hearing on the motion, plaintiff's attorney, Steven McCarthy, gave the court an explanation for the faulty expert declaration. McCarthy said that he contracted with American Medical Forensics Services for Dr. Kim's services in this case. When he contacted Dr. Kim to get his declaration, Dr. Kim told him he was out of the expert witness business and would not do any further work. After some persuasion, Dr. Kim agreed to execute a declaration containing only the substance of a letter he had written when he first evaluated the case.

McCarthy said American Medical Forensics Services eventually talked Dr. Kim into signing the amended declaration, but by then the time to respond was over. McCarthy explained that the NIST is the National Institute of Standards and Technology, a part of the United States Department of Commerce that promulgates the radiological standards in the business.

---

[3] Code of Civil Procedure section 2015.5 states in part that a declaration made within the State of California must either state the date and place of execution or must state the date of execution and that it is declared under the laws of the State of California. References to an undesignated section are to the Code of Civil Procedure.

[4] Brachytherapy is the name of the procedure plaintiff underwent in which radioactive seeds were implanted into his prostate.

The trial court stated: "Everything that you've said may well be part of the subsequent motion, but it's not a motion that you're going to make orally here today without notice to the other side without thoroughly briefing it. The statutory period and the notice required for motion for summary judgment, we all know, has been enlarged for the very purpose of giving folks like you full and complete, and then some, opportunity to respond. I don't, frankly, have a whole lot of sympathy for your position of suddenly not having an expert and for having an expert who won't sign what potentially would be of use. I have sympathy for your client, and, if you want to make a motion down the road, that's fine."

The order on the motion for summary judgment described Dr. Kim's declaration as "patently inadequate[]" because it did not comply with section 2015.5, did not indicate Dr. Kim had any expertise in brachytherapy, stated the legal conclusion that there had been negligence, but did not mention the standard of care, and based its conclusion on the 1999 NIST standard without defining or explaining such standard. The trial court acknowledged plaintiff had filed an amended declaration of Dr. Kim, but declined to consider the amended declaration.

Plaintiff filed a motion for reconsideration of the ruling on summary judgment. The motion included the declarations of McCarthy and Dr. Barry Gustin, the Director of the Physician Advisory Board of American Medical Forensic Specialists, Inc., which repeated under oath the difficulties in getting Dr. Kim's declaration to which McCarthy had attested during the hearing on the motion for summary judgment. The motion also included a third declaration of Dr. Kim. In it, Dr. Kim stated, "[t]he National Institute of Standards and Technology promulgates standards for the medical community by which [*sic*] the amount of radioactive material to be implanted, based upon, among other things, the prostate volume."

Dr. Kim also confirmed he told McCarthy he was no longer in the expert witness business when McCarthy contacted him about executing a declaration, and that he later agreed to execute a declaration limited to exactly what he had said in an earlier report. He concluded the declaration by stating that if called to testify he would say defendants fell below the standard of care in developing the planned dosage and in implementing the procedure.

The trial court denied the motion for reconsideration, indicating plaintiff had not provided any new or different facts, circumstances, or law. Plaintiff then filed his petition for writ of mandate with this court and requested a stay.

Immediate writ review of an order granting summary judgment against some but not all of the defendants in a case is appropriate where the trial is proceeding against one or more codefendants. (*Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 710, fn. 1 [52 Cal.Rptr.2d 821].) Immediate review is preferable to obviate possible multiple trials in the case. (*Ibid.*) We granted an alternative writ and stayed the proceedings.

## DISCUSSION

Because summary judgment is a drastic measure that deprives the losing party of trial on the merits, it may not be invoked unless it is clear from the declarations that there are no triable issues of material fact. (*Bunzel v. American Academy of Orthopaedic Surgeons* (1980) 107 Cal.App.3d 165, 169 [165 Cal.Rptr. 433].) Any doubts about the propriety of granting a summary judgment motion must be resolved in favor of the party opposing the motion. (*Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 355 [105 Cal.Rptr.2d 749].) Courts must abide by the strong public policy favoring disposition on the merits over judicial efficiency. (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 [107 Cal.Rptr.2d 270].) The purpose of summary judgment is to provide a means to determine whether issues which appear to be raised by the pleadings are real, or merely the product of adept pleading. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7 [34 Cal.Rptr.2d 898, 882 P.2d 894].) The summary judgment provisions were never intended to deprive a party of a right to a trial. (*Richter v. United Calif. Theatres, Inc.* (1960) 177 Cal.App.2d 126, 131 [1 Cal.Rptr. 895].)

Section 437c provides in pertinent part that the trial court shall grant a summary judgment motion if all the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) The papers supporting or opposing a summary judgment motion may include "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (§ 437c, subd. (b)(1).)

A defendant moving for summary judgment has the burden of presenting facts to negate an essential element of each cause of action or to show there is a complete defense to each cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Where, as here, the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding it was more likely than not that the material fact was true. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

In this case, plaintiff has the burden of proving by a preponderance of the evidence that defendants' treatment fell below the standard of care. To be entitled to summary judgment in their favor, defendants were required to present evidence that would preclude a reasonable trier of fact from finding it was more likely than not that their treatment fell below the standard of care. Only if defendants were successful in meeting this burden does the burden shift to plaintiff to demonstrate the existence of a triable issue of material fact. (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].) Unless the moving party meets its burden, summary judgment cannot be ordered, even if the opposing party does not respond sufficiently or at all. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 59–60 [72 Cal.Rptr.2d 359].)

Although much of defendants' briefing concerns the shortcomings of Dr. Kim's declaration, we need not reach the adequacy of plaintiff's opposition to the motion, or whether the trial court abused its discretion in refusing to consider plaintiff's late-filed amended declaration because we conclude defendants failed to present sufficient evidence to show they acted within the standard of care.

■ The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage. (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 [90 Cal.Rptr.2d 396].)

■ Because the standard of care in a medical malpractice case is a matter "peculiarly within the knowledge of experts" (*Sinz v. Owens* (1949) 33 Cal.2d 749, 753 [205 P.2d 3]), expert testimony is required to "prove or disprove that the defendant performed in accordance with the standard prevailing of care" unless the negligence is obvious to a layperson. (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 [78 Cal.Rptr.2d 122].) However, the expert testimony must be based on such matters as may be reasonably relied upon by an expert in forming an opinion on the subject. (*Ibid.*) With regard to a standard of care derived from a professional practice "the induction of a rule from practice necessarily requires the production of evidence of an ascertainable practice." (*Wheeler v. State Bd. of Forestry* (1983) 144 Cal.App.3d 522, 528, fn. 5 [192 Cal.Rptr. 693].)

Plaintiff's complaint contained a single cause of action for medical malpractice. The key provision alleged that defendants "implanted or caused to be implanted an excessive amount of radioactive material in Plaintiff's prostate gland such that the surrounding tissues and organs suffered irremediable damage, causing Plaintiff to suffer the damages . . . alleged."

Defendants sought to show through the declaration of Dr. Wallner that there was no breach of duty because the care and treatment of plaintiff was within the standard of care applicable at the time. The declaration does not relate his conclusion to the number of seeds implanted in the plaintiff, nor the radiation dose given the plaintiff, nor the relation of the dose to the prostate volume, nor any standard by which to measure the appropriate dose. Rather, it contains two conclusory statements that occupy five sentences of the declaration.

The first states: "On September 2, 1999, Plaintiff had an ultrasound of his prostate. Thereafter, plans were made on where and how many radioactive seeds should be placed. The implantation plan was created by DR. ROSENTHAL. DR. LEIBENHAUT, another radiation oncologist, reviewed the plan and agreed with DR. ROSENTHAL'S calculation. The plan was within the standard of care at the time."

The record shows the implementation plan, dated September 16, 1999, was for 117 seeds that would release a total activity of 41.42 mCi. As to this, the first statement says the plan was within the standard of care "at the time." However, this was not the plan when the seeds were implanted on September 30, 1999. At the time of the operation the number of seeds was increased by 8 seeds to 125 seeds and the dosage was increased to 44.8 mCi.

As to the actual seeds implanted, the Wallner declaration states: "Plaintiff had a post-procedure check of the seeds done on November 11, 1999. The results showed an adequate dosage. The implantation was within the standard of care for the time." The post-procedure check in fact refers to an evaluation dated March 27, 2003. It states that a CT (computed tomography) study was done on November 11, 1999, and that "125 seeds were identified . . . and the dose distribution was calculated with an activity of 0.358 mCi/Seed." Later, on March 27, 2003, "[p]rostate volumes were drawn [and] isodoses and dose volume histograms were generated." It was concluded, apparently on the basis of both the November 11, 1999, and March 27, 2003, checks, that "[t]he

distribution of seeds and dose coverage of the tumor volume is found to be adequate . . . ."

Thus, when the Wallner declaration says that the "implantation was within the standard of care," it is based on an evaluation dated well after November 11, 1999, that says no more than that the seed distribution "and dose coverage of the tumor volume [were] found to be adequate."

In sum, the Wallner declaration says no more than what was planned before the operation and what was done at the time the seeds were implanted were within the standard of care. It does not relate the number of seeds and their radiation dose to the volume of the prostate. It does not set forth a standard for the proper number of seeds to be implanted. It does not explain why additional seeds were implanted during the operation.

This case is analogous to *Kelley v. Trunk*. There, the patient developed serious complications (including neurological damage and scarring requiring skin grafts) after being treated for a laceration on his arm. (*Kelley v. Trunk, supra,* 66 Cal.App.4th at p. 521.) The patient called the doctor twice after the treatment complaining about his pain, but the doctor never inquired about the patient's symptoms and did not suggest he return to the emergency room or see a physician immediately. (*Ibid.*) The doctor moved for summary judgment, submitting the expert declaration of another doctor, which, after relating the patient's treatment stated, " '[a]t all times . . . Trunk acted appropriately and within the standard of care under the circumstances presented.' " (*Id.* at p. 522.)

██ The court held the declaration was not admissible since it did not disclose the matter relied upon in forming the opinion, and held it did not establish the absence of a material fact because it was "unsupported by reasons or explanations . . . ."[5] (*Kelley v. Trunk, supra,* 66 Cal.App.4th at p. 524.) The court said the summary judgment standard "is not satisfied by laconic expert declarations which provide only an ultimate opinion, unsupported by reasoned explanation." (*Id.* at p. 525; see also *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 498, fn. 3 [138 Cal.Rptr. 696, 564 P.2d 848] [" '[T]he expert's [medical] opinion must rest upon relevant facts and must consist of something more than a legal conclusion.' "])

---

[5] Unlike *Kelley v. Trunk, supra,* 66 Cal.App.4th 519, plaintiff objected to Dr. Wallner's declaration on the grounds it lacked foundation and was a legal conclusion; therefore, plaintiff did not waive this deficiency.

*Kelley v. Trunk* was followed by this court in *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [11 Cal.Rptr.3d 653], in which the trial court struck the plaintiff's expert declarations as conclusory because they were based upon assumptions of fact. The patient alleged his doctors were negligent in performing his abdominal surgery, resulting in injury to his shoulder. The patient's doctors declared nothing occurred during the surgery or in transportation from the operating room to cause injury to the patient's shoulder. (*Id.* at p. 498.) The plaintiff's experts could cite to no facts upon which to base their opinions that the cause was the negligence of the defendants.

The evidence of the party opposing the motion must be liberally construed, and that of the moving party strictly construed. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) In strictly construing Dr. Wallner's declaration, a trier of fact would not be able to tell upon what he based his determination that defendants met the standard of care because he did not explain the basis for his opinion. The crucial issue was whether too many radioactive seeds were implanted into plaintiff's prostate. Dr. Wallner's declaration does not explain how the number of seeds to be implanted is usually determined, or what is the recognized standard for making the determination. He says no more than what was done was within the standard of care.

The issue is not merely whether the surgical procedures were performed correctly—something that could be determined only by reviewing the records and concluding no mistakes were made. Plaintiff's surgery and followup could have been performed in this case without mistake. Since a patient undergoing brachytherapy could be harmed by receiving too much radiation, an expert opinion that does not set forth the standard for determining the safe amount fails to give the factual data upon which the opinion is based. "[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based." (*Bushling v. Fremont Medical Center*, *supra*, 117 Cal.App.4th at p. 510.)

Defendants' production of evidence was conclusory, thus insufficient to establish the nonexistence of any triable issue of material fact. Not having met this initial burden, defendants are not entitled to a judgment as a matter of law.

## DISPOSITION

The alternative writ is discharged, and a peremptory writ shall issue directing the trial court to vacate its order of October 5, 2005, and enter a new and different order denying defendants' motion for summary judgment. The stay issued by this court shall remain in effect until full compliance by respondent or until this opinion becomes final as to this court. Plaintiff shall recover costs incurred in these writ proceedings.

Davis, J., and Hull, J., concurred.