Filed 2/10/16  Hernandez v. Ko CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JOSE J. HERNANDEZ, | C077061 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201100272644CUMMSTK) |
| v. | |
| SAMUEL KO, | |
| Defendant and Respondent. | |

In a prior appeal, we affirmed the summary judgment granted to Dignity Health, sued as St. Joseph's Medical Center, because plaintiff Jose J. Hernandez, an in pro. per. litigant, failed to offer any expert testimony to substantiate his vague claim that the hospital's negligence in treating him for chest pain caused the symptoms he experienced six months later and resulted in his permanent disability.[1]  In this appeal, plaintiff

---

[1]  A party is entitled to act as his own attorney but is entitled to no greater consideration than other litigants or attorneys and is subject to the same restrictive procedural rules as an attorney.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247 (*Nwosu*); *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193.)

1

challenges the summary judgment granted a hospitalist, Samuel Ko, M.D., who had an exceedingly limited role in plaintiff's care during the same hospitalizations. Again we affirm the summary judgment because plaintiff continues to fail to offer any expert testimony to create a triable issue of material fact regarding a breach of the standard of care, causation, or the applicability of res ipsa loquitur as a substitute for negligence. Because the underlying allegations and plaintiff's supporting declarations remain virtually unchanged, we borrow liberally from our prior opinion. (*Hernandez v. Dignity Health* (Mar. 13, 2015, C074946) [nonpub. opn.] (*Hernandez*).)

## PLEADING, MOTION, EVIDENCE, AND RULING

Plaintiff, a morbidly obese, diabetic smoker with hypertension, filed a medical malpractice lawsuit against the hospital and various doctors who treated him. He alleges a single cause of action for general negligence based on the following facts.

On or about August 20, 2010, he was admitted to the hospital for "severe pain and uncontrollable shaking of the head." The hospital staff administered a series of tests, stabilized him, gave him some medication, and released him. He went home, fainted, and returned to the emergency room. He alleges that Dr. Ko asked him if he was " 'trying to kill [himself] by taking those medications." He opines that because he is diabetic, he should have been monitored for a few hours after his medication was changed. He complained of weakness in his left side and some numbness. Once stable, he was again discharged. Again, he opines in his complaint, "An MRI conducted on a diabetic does not always show accurate results immediately should be conducted a second time between 24 and 48 hours which was not done, which was below the standard of care."

He further alleges that the pain persisted but he returned to work until February 4, 2011, when he was taken to St. Joseph's again, complaining of severe pain in his legs and that he had "back and neck issues." He was again given medication and discharged. Four days later he was taken to a different hospital. He alleges: "The doctors at Dameron [Hospital] sent him for an MRI and other tests which determined that he had

2

suffered two strokes and that was why his left side was weak and numb." He concludes: "Plaintiff believes that because he was not diagnosed properly and did not receive the appropriate care at St. Joseph's Hospital he is now permanently disabled, unable to work and has to use a walker or cane to get around."

In plaintiff's opposition to the motion for summary judgment he asserts, without any evidentiary support, "The plaintiff was permanently harmed by Dr. Samuel Ko's inaction in advising the ER doctor on 8/25/2010 that the patient had received an Isosorbide Mononitrate (IMDUR) overdose and that the plaintiff had received 4 different blood pressure lowering medications over a period of 3 days of the initial admission along with a series of medication errors concerning wrong dose and wrong time." In the same document he alleges that Dr. Ko made a charting error by referring to him as a female rather than a male.

In support of his motion for summary judgment, defendant Ko submitted the declaration of James D. Leo, M.D., a board certified internist and emergency room physician with a subspecialty in critical care. Dr. Leo reviewed plaintiff's complaint, discovery requests and responses, plaintiff's opposition to the motion for summary judgment in the Dignity Health proceedings, the court's rulings in Dr. Le's and Dignity Health's cases, and plaintiff's medical records from the hospital, the imaging centers, and plaintiff's treating physician. Based on his review of these documents and his training, background, and experience, he expresses the following medical opinions and provides a useful summary of Dr. Ko's involvement.

"In sum, Dr. Ko had a limited role in plaintiff's care. Dr. Ko fully complied with accepted medical standards regarding his conduct, under the circumstances. Nothing he did or did not do was a cause of any damage, harm, loss or injury to or claimed by Mr. Hernandez. During the August 21-25 admission, the attending hospitalist was Dr. Nguyen, not Dr. Ko. Morevoer, it was Dr. Jamuri, not Dr. Ko, who discharged Mr. Hernandez on August 25, 2010. Dr. Ko's involvement during the August 21-25

3

admission was simply to examine the patient for fitness of discharge upon the recommendation of the cardiac specialist, Dr. Marshadi. Dr. Ko properly deferred to the specialist and properly carried out the specialist's recommendations, including the medication orders. Following Dr. Ko's examination, the patient's condition changed and the planned discharge was held. When the patient was eventually discharged the next morning, the nurses, according to their documentation, explained the medication usage to the patient. After returning home, the patient reported a near syncopal or syncopal incident and returned to the hospital. He was evaluated by the emergency room physician, who called in Dr. Ko to assess the patient for readmission. Dr. Ko properly assessed the patient's condition and raised the possibility that the near syncopal or syncopal episode could be medication-related. Dr. Ko had the patient admitted to telemetry and called in a specialist to evaluate Mr. Hernandez. While on the telemetry unit, the patient's care was assumed by Dr. Nguyen and, the following day, by Dr. Le, who followed the patient through discharge. Dr. Ko had no further involvement."

"It is my opinion based on my review, and my knowledge, training and experience, that Dr. Ko, in assessing and caring for Mr. Hernandez, demonstrated that he possessed and exercised that degree of knowledge, skill and care ordinarily possessed and exercised by other reputable practitioners, acting under same or similar circumstances. It is further my opinion, to a reasonable medical probability, if not certainty, that nothing Dr. Ko did or failed to do, constituted a substantial factor to plaintiff's claimed damage, or any damage, loss, harm or injury at all."

He reiterated that Dr. Ko did not cause any injury to plaintiff. "To a reasonable medical probability, if not certainty, there was nothing Dr. Ko did or did not do that caused Mr. Hernandez any damage, harm, loss or injury. Mr. Hernandez has had a number of medical issues and a variety of complaints at different times. Some of his subjective complaints could not always be substantiated. During the St. Joseph hospitalization it is clear the health care professionals assessing him took his signs,

4

symptoms and complaints seriously. . . . What is clear is that none of Mr. Hernandez's complaints, nor what he charges as damage, was causally contributed to, substantially or at all, by Dr. Ko, particularly mindful of his limited involvement in the patient's care. Moreover, what Mr. Hernandez claims resulted in his hospitalization at Dameron Hospital (when he experienced acute neck and back pains and difficulty breathing on February 8, 2011, after heavy lifting at work), is unrelated to any care or treatment by Dr. Ko. The remoteness to the subject hospitalizations at St. Joseph's, the amount of time that thereafter elapsed, the circumstances of the onset of his complaints, and a multiplicity of issues, as well as the Dameron Hospital workup, fail to medically establish any causal linkage to the subject hospitalizations at St. Joseph Medical Center in August 2010. That is certainly so regarding Dr. Ko."

Plaintiff submitted various exhibits in opposition to Dr. Ko's motion for summary judgment, including a declaration by a school nurse who is a friend of plaintiff's sister, unauthenticated hospital records, and copies of research he did on the Internet on topics such as strokes and standards of care. In his opposition to the motion for summary judgment, he argues that "[t]he errors contained within the hospital record is [*sic*] within the scope of expertise of Audrey Petricevich, RN, MSN. The errors are evident and based on the facts therefore the record speaks for itself and for these reasons plaintiff invokes the res ipsa loquitur doctrine."

Plaintiff submitted a Petricevich declaration in opposition to a motion for summary judgment against another doctor and the hospital. In both cases, the court found the declaration did not create triable issues of material fact. Plaintiff submitted a nearly identical declaration by the same nurse in his opposition to Dr. Ko's motion for summary judgment, with one small change. In opposition to the prior motions the nurse admitted, "While these issues for the most part are common sense they are partially or out of my scope of my [*sic*] expertise." In opposition to Dr. Ko's motion she modified her admission and now writes, "The errors contained within the hospital record is [*sic*] within

the scope of my expertise.  The errors are evident and based on the facts therefore the record speaks for itself."

The single reference to Dr. Ko in the modified Petricevich declaration is to his clerical error in referring to plaintiff as a female in the medical history section of his report.

The trial court concluded, "The Declaration by Audrey Petricevich fails to create a triable issue of fact as to whether or not the Defendant Dr. Ko's treatment of Plaintiff fell below the standard of care.  In fact, Ms. Petricevich's Declaration shows that Dr. Ko was the hospitalist who determined that there was an over dose of the Imdur medication given to Plaintiff.  Nowhere in Ms. Petricevich's Declaration does she state that Dr. Ko's treatment of Plaintiff fell below the standard of care.  Therefore, Defendant's Motion for Summary Judgment is granted."

Plaintiff appeals.  We will not consider any facts, allegations, or evidence offered for the first time on appeal.

## DISCUSSION

We need not reiterate at length the basic rules governing our review of a summary judgment of a medical negligence case as they are well known and not at issue here. Suffice it to say, because summary judgment is a drastic remedy depriving a litigant of a trial on the merits, a moving party must demonstrate there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (*Hernandez v. KWPH Enterprises* (2004) 116 Cal.App.4th 170, 174.)  The trial court must liberally construe the opposing party's declarations, resolve all doubts in the light most favorable to the opposing party, and draw all reasonable inferences in the opposing party's favor. (*Ibid*.)  Our review is de novo.  (*Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 844.)

"The elements of a cause of action for medical malpractice are:  (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the

6

negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 (*Johnson*).) To establish proximate causation, "[T]he evidence must be sufficient to allow the jury to infer that in the absence of the defendant's negligence, there was a reasonable medical probability the plaintiff would have obtained a better result." (*Alef v. Alta Bates Hospital* (1992) 5 Cal.App.4th 208, 216.)

These are the generic principles applicable to the resolution of any summary judgment of a medical malpractice case. It is plaintiff's abject failure to abide by one specific requirement in a medical negligence case that is fatal to his lawsuit. The cases abound, but the principle is simply stated. A plaintiff opposing a motion for summary judgment on a medical malpractice claim must present competent expert testimony that the defendant's delivery of medical services fell below the standard of care and the breach of the duty of care proximately caused the injury. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 957-958; *Johnson*, *supra*, 143 Cal.App.4th at p. 305.)

" 'California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' [Citation.]" (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984-985 (*Munro*).) More recently, this court put the plaintiff's burden this way: "[W]here the conduct required of a medical professional is not within the common knowledge of laymen, a plaintiff must present expert witness testimony to prove a breach of the standard of care. [Citations.] Plaintiff also must show that defendants' breach of the standard of care was the cause, within a reasonable medical probability, of his injury." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 509.)

7

Plaintiff relies on the medical testimony of a school nurse, a friend of plaintiff's sister. The nurse catalogues a list of charting errors as well as missteps in the administration of plaintiff's medications. The trial court found that her declaration did not create a triable issue of fact regarding Dr. Ko's breach of the standard of care. The court also included in its ruling excerpts from Dr. Leo's declaration wherein defendant's expert expressly found that Dr. Ko's treatment or failure to treat did not cause any injuries or harm and the nurse did not offer competent medical testimony that any of the alleged missteps caused, within a reasonable medical probability, any of plaintiff's ill-defined injuries. We examine the sufficiency of the declaration, therefore, to create a triable issue that Dr. Ko's treatment fell below the standard of care and that his alleged negligence caused injury to plaintiff.

In our prior opinion we pointed out that there was a glaring deficiency undercutting anything the nurse hypothesized about the standard of care or causation. She mused about the propriety of administering medications to plaintiff, a diabetic, and took sides regarding some alleged discrepancies between the cardiologist and the neurologist and oncologist. She wrote: "Reliance on the verbal opinion of the cardiologist that the left sided weakness was not a stroke over the neurologist and oncologist who both documented that the likely etiology of the left sided weakness was stroke. A later formal cardiologist report does not rule out stroke as the cause of the left sided weakness." But she then conceded, "While these issues for the most part are common sense they are partially or out of my scope of my expertise." (*Hernandez*, *supra*, C074946.)

An expert cannot speculate on areas outside the scope of her expertise. While the nurse might have been competent to evaluate the propriety of how the nurses charted, she certainly exceeded her expertise when opining on the complex calculations the various specialists made in treating an obese diabetic patient who visited emergency rooms with some frequency for a variety of complaints ranging from chest pain, to neck pain, to leg

8

pain, to dizziness, and other assorted aches and pains. Indeed, she expressly acknowledged she had overstepped the boundaries of her own expertise. Her declaration therefore provided no expert evidentiary support for the notion that the charting and medication errors she identified caused plaintiff to have a stroke or any other injury.

It is true the nurse makes a clumsy attempt in this case to rectify her earlier admission that the issues were outside the scope of her expertise, by revising her declaration to read: "The errors contained within the hospital record is [*sic*] within the scope of my expertise. The errors are evident and based on the facts therefore the record speaks for itself." Even if we could ignore her prior judicial admission that the clinical issues were outside her expertise, her new declaration does not create a triable issue of material fact regarding Dr. Ko. Nowhere in the declaration does the nurse state that Dr. Ko's treatment of plaintiff fell below the standard of care, nor does it explain how what he did or failed to do caused plaintiff harm or injury. Her solitary reference to Dr. Ko pertained exclusively to a clerical error in misstating plaintiff's gender, but there is no indication how the error resulted in any harm. Thus the simple expedient of stating the issues were within her expertise, when previously she had sworn they were not, does not save plaintiff's lawsuit against Dr. Ko.

In his complaint and briefing on appeal, plaintiff offers various medical opinions as if he is an expert. As defendant Ko points out, plaintiff is not a physician, and his opinions and observations were not presented to the trial court in a declaration. We therefore must disregard his allegations and conclusions. (*Taylor v. California State Auto. Assn. Inter-Ins. Bureau* (1987) 194 Cal.App.3d 1214, 1223.)

In his complaint, plaintiff alleges that the doctors at another hospital subsequently administered an MRI and determined he had suffered a stroke. Conspicuously missing from plaintiff's opposition to the motion for summary judgment, however, is any testimony or documentation from this hospital or the doctors who treated him. Simply put, plaintiff offers no competent medical testimony as needed to avoid summary

9

judgment in a medical malpractice case that anything Dr. Ko did, or did not do, caused, to a reasonable medical probability, any of the injuries he claims to have suffered.

In addition to the nurse's declaration, plaintiff also submitted hospital records and an amalgamation of materials he found on the Internet. As mentioned above, a litigant who chooses to represent himself is subject to the same rules of evidence as an attorney. (*Nwosu*, *supra*, 122 Cal.App.4th at pp. 1246-1247.) Hospital records must be authenticated to be admissible. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742-743.) Plaintiff fails to present the requisite authentication.

Nor are random facts, reports, or articles downloaded from the Internet admissible without laying a proper foundation. Plaintiff provides nothing but the raw copies of materials he found combing the Internet. Unless they fall within an exception to the hearsay rule, it has long been established that words in a medical journal cannot be read into evidence, over objection, where the author is not present and not subject to cross-examination. (*Gallagher v. Market St. Ry. Co.* (1885) 67 Cal. 13.) For the same reason, the article itself would not be admissible, nor would a copy of the article printed from an Internet Web site, even assuming the computer-generated document were properly authenticated. (See Evid. Code, § 1401.) While neither exhibit, even if admissible, provided the necessary expert testimony to substantiate plaintiff's amorphous theory of causation, they must be disregarded for violating the most basic evidentiary rules for admissibility.

In a last-ditch effort to save his lawsuit, plaintiff asserts he can overcome his failure to produce expert testimony by invoking the doctrine of res ipsa loquitur, a theory that has been successfully employed in medical malpractice cases. (See, e.g., *McKinney v. Nash* (1981) 120 Cal.App.3d 428, 435-440; *Contreras v. St. Luke's Hospital* (1978) 78 Cal.App.3d 919, 930.) Whereas he failed to raise this theory in the trial court in the summary judgment proceedings involving the hospital and we therefore could not consider it for the first time on appeal, he did mention the theory in his opposition to

10

Dr. Ko's summary judgment motion. Apparently the trial court did not notice the issue or disposed of it without comment since there is no mention of res ipsa loquitur in the court's ruling. Nevertheless, because the issue was raised and presents a pure question of law, we will consider it here.

The doctrine of res ipsa loquitur "applies only if the evidence establishes without contradiction that: (1) the accident or injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it is caused by an agency or instrument within the exclusive control of the defendant; and (3) it is not due to any voluntary action or contribution on the part of the plaintiff." (*Clemens v. Regents of University of California* (1970) 8 Cal.App.3d 1, 11.) Here, as in *Clemens,* "[t]he evidence in the record before us by no means establishes without contradiction that the injury to [plaintiff] is of a kind that ordinarily does not occur in the absence of someone's negligence." (*Ibid.*) Indeed, there is no expert testimony that any injury plaintiff allegedly sustained was probably the result of negligence.

To the contrary, plaintiff presented with a highly complex web of symptoms, and doctors of many different specialties were called in to evaluate his condition. Thus, not only was there no evidence the injury was of a kind that would not have occurred in the absence of negligence, there was overwhelming evidence that his treatment was not within the exclusive control of Dr. Ko. Although the hospital and the other doctors have all been dismissed from the lawsuit and Dr. Ko is the last man standing, his involvement was far more minimal than any of the others. Plaintiff therefore is unable to establish either one of the first two conditions necessary to invoke the res ipsa loquitur presumption. We need not consider further whether plaintiff might have contributed to his own injury, thereby establishing that the theory does not have a single leg to stand on. As Dr. Ko pointedly asserts, plaintiff has failed to articulate with any clarity whatsoever what injury he actually suffered. Without an appreciation of what type of harm plaintiff

11

actually sustained, it is impossible to determine whether he played a role in harming himself.

In short, plaintiff failed to appreciate the evidentiary burden he bore before the trial court. That is to say, he failed to provide expert testimony that any negligence committed by Dr. Ko fell below the standard of care and caused him injury to controvert Dr. Ko's expert's conclusion that "Dr. Ko fully complied with accepted medical standards regarding his conduct" and that "none of Mr. Hernandez's complaints, nor what he charges as damage, was causally contributed to, substantially or at all, by Dr. Ko, particularly mindful of his limited involvement in the patient's care." In the absence of an expert's declaration creating a triable issue as to a failure to meet the standard of care or causation, Dr. Ko was entitled to summary judgment. Res ipsa loquitur cannot rescue this fatally flawed lawsuit.

## DISPOSITION

The judgment is affirmed.


                                                RAYE        , P. J.


We concur:


     NICHOLSON    , J.


     MAURO       , J.