Filed 7/12/24  Gamboa v. Arman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ELVIRA GARCIA GAMBOA, | |
| Plaintiff and Appellant, | C098708 |
| v. | (Super. Ct. No. 34-2022-00324900-CU-MM-GDS) |
| ANUPAM ARMAN, | |
| Defendant and Respondent. | |

Elvira Garcia Gamboa sued Anupam Arman, D.C., a chiropractor, alleging that Dr. Arman's professional negligence caused her to sustain broken ribs and other injuries. The trial court granted summary judgment in favor of Dr. Arman.

Gamboa now challenges the trial court's grant of summary judgment.  Because her contentions are either forfeited or lack merit, we will affirm the judgment.

BACKGROUND

Gamboa received chiropractic treatment from Dr. Arman at The Joint Chiropractic on January 4, 2022.  Prior to undergoing treatment, Gamboa filled out a patient history form, indicating intermittent pain on the left side of her neck, back, and shoulder. Gamboa also signed an informed consent form that warned her of the various risks of chiropractic treatment, including "the possibility of sprains, dislocations and fractures," and more specifically, "rib fractures or muscle and ligament strains or sprains as a result of manual therapy techniques."

1

Dr. Arman documented the chiropractic session, noting that she manually palpated Gamboa's spine and found "[m]ildly taut and tender fibers" at several vertebral segments, as well as misalignments at three segments. Dr. Arman then conducted a manual adjustment, noting that Gamboa "stated an increase in soreness in the anterior right rib cage" during the thoracic spine adjustment. Gamboa described the adjustment as a "violent extreme application of force on the lower back" that resulted in "excruciating pain and a seemingly cracking sound on [her] ribs," causing her to cry out "Lord have mercy!" At that point Dr. Arman stopped the adjustment and tended to another patient while Gamboa drank some water. Dr. Arman returned to Gamboa about 15 minutes later and finished the session with an instrument-assisted adjustment of three spinal segments. Upon completion of the session, Gamboa paid the $29 fee and left the office unassisted.

About a week later, Gamboa received an x-ray of her chest and ribs. The x-ray report revealed no rib fractures, no traumatic malalignment, and no other significant abnormality, aside from decreased bone mineral density. About two months later, Gamboa received a CT scan of her chest, abdomen, and pelvis, which showed " 'multiple healing bilateral rib fractures' of an unknown age." About three months later, Gamboa received both an x-ray of her chest and a CT scan of her abdomen and pelvis. The x-ray revealed mild degenerative changes to her thoracic spine and shoulders, but no fractures. The CT scan showed plaque build-up in her aorta, severe degenerative disc disease, and mild anterolisthesis, i.e., abnormal alignment of the spine.

Representing herself, in August 2022 Gamboa filed a lawsuit against Dr. Arman for professional negligence. As relevant here, Gamboa alleged the "intense, violent 'cracking' pressure" that Dr. Arman applied to her back amounted to professional negligence and resulted in multiple broken ribs, anterolisthesis, pain and suffering, and irreparable long-term physical, mental, and emotional injuries. Gamboa sought $2 million in damages.

Dr. Arman moved for summary judgment, asserting she was entitled to judgment as a matter of law because she did not breach the applicable standard of care and did not proximately cause Gamboa's injuries. In support of the motion, Dr. Arman submitted an expert witness declaration from Wayne Whalen, D.C. After setting forth his expert witness qualifications and recounting much of the foregoing facts, Dr. Whalen opined that "the standard of care was met at all times with respect to the chiropractic care and treatment that was provided." Specifically, Dr. Whalen noted that Gamboa signed an informed consent agreeing to proceed with chiropractic treatment notwithstanding the disclosed risks, including the risk of rib fractures, dislocations, sprains, and strains. Dr. Whalen also noted that complaints of neck, shoulder, and back pain are routinely evaluated and treated by chiropractors, and there were no contraindications to proceeding with such treatment disclosed in Gamboa's medical history or revealed during Dr. Arman's initial examination. Accordingly, all indications pointed towards Gamboa being an appropriate candidate for chiropractic treatment. Dr. Whalen stated that the standard of care did not require Dr. Arman to obtain and review an x-ray of Gamboa's spine prior to providing chiropractic treatment. Dr. Whalen also described the chiropractic treatment provided by Dr. Arman as standard chiropractic spine manipulation that was designed to address Gamboa's back complaints and pain. Dr. Whalen further opined that such a full back adjustment was "well within the standard of care . . . given [Gamboa's] presenting complaints."

With respect to causation, Dr. Whalen opined: "To a reasonable degree of medical probability, none of [Dr. Arman's] alleged actions or inactions proximately caused or contributed to any of [Gamboa's] injuries or damages." In support of this opinion, Dr. Whalen noted that the x-ray performed six days after the chiropractic treatment "did not reveal any rib fracture or other acute injury." Dr. Whalen added that Gamboa's rib pain and alleged fractures could occur "in the absence of negligence, as such pain is a known and explicitly listed risk of chiropractic treatment," which Gamboa acknowledged when

3

she signed the informed consent. Dr. Arman submitted a separate statement of undisputed material facts tracking Dr. Whalen's declaration.

Gamboa opposed the motion. In response to Dr. Arman's separate statement, Gamboa admitted most of the background facts but urged the trial court to consider her version of events. Gamboa disputed Dr. Whalen's expert opinions regarding the standard of care and causation.

The trial court sustained Dr. Arman's objections to Gamboa's exhibits, granted summary judgment, and entered judgment in favor of Dr. Arman. The trial court concluded Dr. Arman's evidentiary showing established that Gamboa could not prove two of the elements of her cause of action -- breach of the standard of care, and causation -- and Gamboa's showing did not demonstrate a triable issue of material fact.

## DISCUSSION

Gamboa challenges the trial court's grant of summary judgment in favor of Dr. Arman.

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*); see Code Civ. Proc., section § 437c, subd. (c).)[1] Thus, a defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see § 437c, subd. (*o*)(2).) Such a defendant also "bears the initial burden of production to make a prima facie showing that no triable issue of material fact

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

4

exists. Once the initial burden of production is met, the burden shifts to [the plaintiff] to demonstrate the existence of a triable issue of material fact." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250.)

On appeal from the entry of summary judgment, "[w]e review the record and the determination of the trial court de novo." (*Kahn, supra*, 31 Cal.4th at p. 1003.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

"Medical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances. [Citation.] Thus, in ' "any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his [or her] profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' [Citation.]" ' [Citation.]" (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 (*Powell*).)

"Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' unless the negligence is obvious to a layperson." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 (*Johnson*).) The same is true with respect to whether "the breach caused the injury to the plaintiff. [Citation.] ' "California courts have incorporated the expert evidence requirement into their standard for summary judgment

5

in medical malpractice cases. When a defendant moves for summary judgment and supports his [or her] motion with expert declarations that [the defendant's] conduct fell within the community standard of care, [the defendant] is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." ' [Citation.]" (*Powell, supra*, 151 Cal.App.4th at p. 123.)

Here, Dr. Arman moved for summary judgment on the grounds that Gamboa could not establish either a breach of the duty of care, or that such a breach caused resulting injury. Dr. Arman satisfied her initial burden of production by submitting Dr. Whalen's declaration, which was sufficiently detailed to make a prima facie showing. The burden of production therefore shifted to Gamboa to establish a triable issue of material fact, which she did not do. Gamboa did not present admissible evidence to rebut Dr. Whalen's expert opinions.

Gamboa argues Dr. Whalen is a fake expert who was not present during her near-death encounter and who lied in his declaration. But Dr. Whalen set forth his expert credentials in his declaration, and he did not need to be present during the incident in order to provide expert testimony on the standard of care, breach, and causation. "[E]xpert testimony must be based on such matters as may be reasonably relied upon by an expert in forming an opinion on the subject." (*Johnson, supra*, 143 Cal.App.4th at p. 305.) Gamboa's appellate briefing does not specifically argue that such a standard was not met. Any such assertion is forfeited. (See *Chino Commercial Bank, N.A. v. Peters* (2010) 190 Cal.App.4th 1163, 1170, fn. 1.)

Gamboa also appears to argue that she established a triable issue of material fact even without submitting an expert declaration of her own. She cites the e-mail communications and medical test results that were attached to her opposition. However, the trial court sustained Dr. Arman's objection to those exhibits. Gamboa's appellate briefing does not specifically challenge that ruling or provide any legal argument supporting the admissibility of her exhibits. She has "forfeited any challenge to the trial

6

court's evidentiary rulings." (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 464.)

Although Gamboa's opposition offered her own personal assessment of Dr. Arman's negligence and how it caused her injury, Gamboa did not file a declaration under penalty of perjury. Even if her signed promise in the opposition to tell the truth "under Oath" had been sufficient, she did not establish personal expert knowledge of chiropractic practices. Her conclusory assertion of unexplained "knowledge[,] wisdom and experience in the field of medical and clinical laboratory practices" was insufficient to support her opinions regarding breach of the chiropractic standard of care or causation. In order to demonstrate a triable issue of material fact, Gamboa was required to come forward with conflicting expert evidence. (*Powell, supra*, 151 Cal.App.4th at p. 123.) She did not do so.

## DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
HULL, Acting P. J.


_____/S/_____
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.