Filed 3/24/26  Juliar v. St. Jude Hospital CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DALE JULIAR et al., | |
| Plaintiffs and Appellants, | G064493 |
| v. | (Super. Ct. No. 30-2022-01280961) |
| ST. JUDE HOSPITAL, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Strickroth, Judge. Reversed and remanded.

Mahoney & Soll, Paul M. Mahoney and Ryan P. Mahoney for Plaintiffs and Appellants.

Kelly, Trotter & Franzen and David P. Pruett, for Defendant and Respondent.

Plaintiffs Dale Juliar, Stephen Juliar, and Timothy Juliar appeal from summary judgment for defendant[1] on their wrongful death claim. For the first time on appeal, plaintiffs assert defendant failed to meet its initial burden because its expert did not establish the standard of care. In our independent review, we agree with plaintiffs. Thus, we must reverse and remand.

FACTS

Plaintiffs sued defendant and a surgeon for the wrongful death of their relative, Helen Juliar. The complaint alleged Juliar died after the surgeon "rupture[d]" Juliar's artery while inserting a pacemaker at the hospital. It alleged defendants "failed to timely diagnose and/or mismanaged an emergency pericardial tamponade."

Defendant moved for summary judgment based on the expert declaration from Julia Hughes, a nurse and former surgery center nursing director with a master's degree in healthcare administration. She recounted: "[t]he surgery started at 2133"; "[a]round 2152 . . . a code blue was called"; and "[a]t 2230, an echo was performed, and it was noted that it was consistent with probable tamponade." Later, "[a]nother echo was performed and showed organized pericardial clots." Another code was called; Juliar could not be resuscitated and died.

Hughes opined: (1) defendant and its staff "met the nursing standard of care in the community"; (2) "[t]he O.R. team ensured that the

_____

[1] The first amended complaint, answer, and judgment designated defendant as "St. Jude Hospital." Some trial court captions designated defendant as "Providence St. Jude Medical Center." In its first filing in this appeal (a notice), defendant designated itself as "St. Jude Hospital" but the respondent's brief designated it as "Providence St. Jude Hospital." We will simply use "defendant."

instruments, equipment, and supplies were ready and available in the O.R.";
and (3) "[t]he O.R. staff . . . timely and appropriately assisted during the
procedure, including both codes." Hughes said nothing specifically about the
delivery of the echocardiogram (ECG).

In opposition, plaintiffs asserted they raised triable issues
through their expert, Dr. Mayer Rashtian, who was board certified in clinical
cardiac electrophysiology. Rashtian recounted that Juliar "went into asystole"
during the surgery; "Brief CPR was performed with chest compression" and
"Stat echocardiogram was ordered. However, there was delay of the
echocardiogram." He noted an unsuccessful "attempt for pericardiocentesis";
at some point, the "Echocardiogram finally arrived to the bedside."

Rashtian opined: (1) defendant "did not provide and make
available an echocardiogram on a timely urgent basis to make prompt
diagnosis of acute cardiac tamponade"; (2) the "hospital was negligent by not
doing an ultrasound and [ECG] sooner"; and (3) "[h]ad the [ECG] been done
on a timely basis, diagnosis of cardiac tamponade would have been made
promptly and [a] life-saving pericardiocentesis [procedure] would have been
done one hour sooner, stabilized her, and the patient would have been alive
today."

Yet Rashtian never explained what qualified him to opine on the
standard of care for hospitals or nurses. Nor did he specify how quickly a
hospital should provide an ECG.

The trial court granted the motion, finding defendant "met its
initial burden." It found Rashtian "is not qualified to opine as to the nursing
standard of care" and, in any event, his opinion "has no evidentiary value"

3

because there was no "reasoned explanation of why the underlying facts lead to the ultimate conclusion."[2]

## DISCUSSION

The parties appear to agree that plaintiffs' wrongful death claim turns on whether defendant timely provided the ECG.

Defendant bore the initial burden to show there were no triable issues of material fact on this point. (Code Civ. Proc., § 437c, subds. (c), (p)(2).) "Unless the moving party meets its burden, summary judgment cannot be ordered, even if the opposing party does not respond sufficiently or at all." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 (*Johnson*).) "[T]he moving party's evidence is strictly construed." (*McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938 (*McAlpine*).)

Summary judgment is unavailable when the supporting expert declaration offers only conclusions. The expert must "set forth" the applicable standard of care and a "reasoned explanation" that "explain[s] *why*" the standard was met. (*McAlpine, supra*, 51 Cal.App.5th at pp. 939–941.) "[A]n expert opinion is worth no more than the reasons upon which it rests." (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 (*Kelley*); accord *Johnson, supra*, 143 Cal.App.4th at p. 308 ["a trier of fact would not be able to tell upon what [the expert] based his determination that defendants met the standard of care because he did not explain the basis for his opinion"].)

Plaintiffs assert in their opening brief that "the nursing expert retained by St. Jude[] did not address St. Jude's delay in providing the echocardiogram." They state: "Unexplained in Hughes's vague conclusion is

---

[2] Plaintiffs do not contest an additional finding that defendant cannot be vicariously liable for the surgeon's negligence.

the missing ECG. Where did it go? Why was it delayed?"[3] They conclude in their reply brief that the declaration "was woefully deficient in that it never addressed the crucial issue in the case, namely the delay of the [ECG] after [the surgeon] ordered it 'stat.'"

While plaintiffs did not pinpoint this criticism below, we may consider it in our "independent assessment of the correctness of the trial court's ruling." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [reversing summary judgment on newly raised issue]; *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1196 [reversing summary judgment despite inadequate opposing papers below].) The issue has now been thoroughly briefed; defendant stood by the Hughes declaration at length in its respondent's brief, describing her opinion as "undisputed."[4]

We agree with plaintiffs that the Hughes declaration did not meet defendant's initial burden. While she opined defendant met the standard of care, she "did not explain the basis for [her] opinion." (*Johnson, supra,* 143 Cal.App.4th at p. 308.) She failed to "set forth" a hospital's standard of care for providing an ECG during a pacemaker procedure. (*McAlpine, supra*, 51 Cal.App.5th at p. 941.) She did not provide a "reasoned explanation" (*id*. at p. 939) that "explain[ed] *why*" that standard was met (*id*. at p. 940). The declaration did not specify how long it took for defendant to provide the ECG or explain why that timeframe was reasonable. It mentions

---

[3] Of course, the better practice is to "[s]tate each point under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).)

[4] We therefore decline defendant's counsel's request at oral argument to file supplemental briefing.

"delay" only to opine there was no delay in administering blood, calling the codes, and initiating resuscitative efforts.

Hughes instead offered vague, unsupported conclusions. She asserts defendant provided "the instruments, equipment, and supplies" and "timely and appropriately assisted." These statements must be "strictly construed." (*McAlpine, supra,* 51 Cal.App.5th at p. 938.) Hughes did not expressly say the ECG was included in those "instruments, equipment, and supplies." She did not expressly say the ECG itself was provided "timely and appropriately." She did not expressly say the timely resuscitative efforts included timely delivery of the ECG. And if the standard of care does not require a hospital to provide an ECG at all unless the surgeon requests it in advance, as defendant suggests, its expert could have said so. The summary judgment "standard is not satisfied by laconic expert declarations which provide only an ultimate opinion, unsupported by reasoned explanation." (*Kelley, supra*, 66 Cal.App.4th at p. 525.)

On the other hand, we agree with the trial court that plaintiffs' expert declaration was also inadequate. Doctors are generally unqualified to opine as to the nursing standard of care, as the trial court noted. (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 969.) And the trial court correctly identified the same flaw in the plaintiffs' expert declaration that we identify in the defense expert declaration—neither teaches us anything about providing ECGs. Neither explains whether a reasonable hospital will have an ECG available during a pacemaker procedure, how quickly a reasonable hospital should deliver an ECG when ordered by the surgeon, or why the time taken here does (or does not) meet the standard of care.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order, enter a new order denying summary judgment, and set a trial setting conference or case management conference. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.