Filed 1/29/21  Donnell v. Four Seasons Healthcare etc. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| DEAN DONNELL, Individually and as Personal Representative, etc., | B302767 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC664101) |
| v. | |
| FOUR SEASONS HEALTHCARE & WELLNESS CENTER, LP et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge. Reversed, with directions.

Medvei Law Group, Sebastian M. Medvei, for Plaintiffs and Appellants.

Clark Hill, Richard H. Nakamura Jr., Marc S. Katz, Marissa E. Mendoza, for Defendants and Respondents.

———————————————

Plaintiffs and appellants Dean Donnell, individually and in his purported capacity as personal representative of the estate of his wife Valerie Donnell, appeals from a judgment after an order granting summary judgment in favor of defendants and respondents Four Seasons Healthcare & Wellness Center, LP, and Rockport Healthcare Support Services, LLC.[1] The complaint purported to allege causes of action on behalf of the estate for negligence, professional negligence, and dependent abuse. The sole cause of action that Dean alleged on his own behalf was for wrongful death.

On appeal, Dean contends: (1) he had standing to pursue the estate's causes of action as the personal representative of Valerie's estate and as her successor in interest; (2) the trial court should have excluded the declaration of Rockport's general manager Rick

_____

[1] Because more than one participant shares the last name Donnell, they will be referred to individually by their first names for ease of reference. No disrespect is intended.

Dumdumaya, because the original declaration was not signed and the corrected copy was untimely; (3) Four Seasons did not submit sufficient evidence to meet its burden of proof for summary adjudication; and (4) the trial court abused its discretion by granting untimely motions to compel further discovery responses and awarding sanctions against Dean in his individual capacity based on discovery that was directed to him solely in his representative capacity.

We conclude Dean failed to raise a triable issue of fact that he had standing to pursue the estate's causes of action as the personal representative of the estate, and he did not comply with legal requirements to pursue the estate' causes of action as the decedent's successor in interest. Therefore, summary judgment was appropriate as to the estate's causes of action.

With respect to Dean's individual cause of action for wrongful death, we conclude the trial court did not abuse its discretion by accepting the corrected Dumdumaya declaration, which Rockport cured before Dean filed his opposition to summary judgment, and therefore, summary judgment was properly granted as to Rockport. Four Seasons, however, did not present evidence that conclusively negated an element of Dean's cause of action for wrongful death. As a result, the burden of proof never shifted to Dean to demonstrate a triable issue of fact and summary adjudication should have been denied as to the wrongful death cause of action against Four Seasons.

The motions to compel further discovery, which were based on discovery requests directed solely to Dean in his purported representative capacity, should have been denied as untimely. We reverse the judgment, as well as the order granting summary adjudication and the order compelling further responses to discovery, with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

### Allegations of the Complaint

The initial complaint in this case was filed on June 6, 2017. On August 22, 2018, Dean filed the operative second amended complaint against healthcare providers Four Seasons, Rockport, Prime Healthcare Services – Sherman Oaks, LLC, doing business as Sherman Oaks Hospital (Sherman Oaks), and Lighthouse Healthcare Center, LLC.[2] He alleged that he was suing in his individual capacity and as the personal representative for Valerie's estate. On behalf of the estate, he brought causes of action for negligence and professional negligence against all defendants, as well as a cause of action for dependent abuse against Rockport, Lighthouse, and Four Seasons. The sole

---

[2] The second amended complaint erroneously named Sherman Oaks Hospital and Prime Healthcare Services, Inc., as two separate defendants, but the parties agree that the defendant is one entity.

4

cause of action that Dean alleged on his own behalf was for wrongful death as against all defendants.

Valerie was disabled and required 24-hour care. On May 6, 2016, Valerie went to Hollywood Presbyterian Hospital for treatment of severe constipation. She was ultimately discharged to Four Seasons. On multiple occasions at Four Seasons, she was left to sit in her own bowel excrement in extreme heat, at times exceeding 90 degrees, for an extended period of time. Dean and Valerie each repeatedly complained about this issue to employees of Four Seasons. Dean called Four Seasons' employees multiple times on one date about Valerie's complaints. Valerie repeatedly reported to Four Seasons' employees that she was too hot and needed to use the bathroom. The employees, including employees directly responsible for Valerie, intentionally refused to change the temperature of her room or assist her in going to the bathroom, even though they were aware of her complaints and the potential injurious consequences.

Four Seasons' administrative, executive, and managerial employees knowingly failed to implement policies for basic check-ups on patients to make sure they were adequately cared for in terms of human excrement cleaning and temperature control. They also failed to maintain policies for assessment, training, and discipline of employees related to neglect, which resulted in the intentional misconduct toward patients including Valerie. They also knowingly understaffed the facility, with a

5

conscious disregard for the effects on patients, in order to have lower overhead costs.  As a result of this conduct, Valerie developed a urinary tract infection (UTI).

On June 14, 2016, Valerie was transferred to Sherman Oaks Hospital as a result of the increasingly severe UTI and extreme dehydration.  On June 21, 2016, Sherman Oaks employees administered Seroquel to Valerie, which has known highly negative side effects as related to Valerie's condition, including risk of heart attack or heart failure.  Valerie was discharged on June 23, 2016, and admitted to the assisted living facility Lighthouse, which is owned and operated by Rockport or one of its subsidiaries.  Valerie repeatedly advised Lighthouse and Rockport employees that she felt extremely hot and needed water.  Lighthouse and Rockport employees intentionally disregarded her complaints, although they were aware of the consequences of dehydration and lack of temperature control to her health.

Dean spoke with Valerie on the telephone at 9:00 a.m. on June 24, 2016.  She complained that she was too hot and was not being given water and other basic nutritional needs, despite repeatedly requesting them from employees from the time that she had been admitted.  Dean reported the conditions to Lighthouse and Rockport employees, but no action was taken to assist Valerie.  Valerie's attending physician was not notified of her complaints or conditions by Lighthouse or Rockport employees until five minutes after she died.  At 12:59 p.m., as Dean was headed to the facility with a fan to assist his wife with temperature control, she

6

died of cardiopulmonary arrest caused by the physical abuse and neglect of the defendants. Had her complaints been addressed, and her attending physician notified of her complaints and the degradation of her condition from 8:00 p.m. the night before, her death would have been prevented.

Rockport's and Lighthouse's administrative, executive, and managerial employees knowingly failed to implement policies for basic check-ups on patients to make sure they were adequately cared for in terms of human excrement cleaning and temperature control. They also failed to maintain policies for assessment, training, and discipline of employees related to neglect, which resulted in the intentional misconduct toward patients including Valerie. They also knowingly understaffed the Lighthouse facility, with a conscious disregard for the effects on patients, in order to have a smaller staff and lower overhead costs.

Despite administrative, executive, and managerial staff being made aware of the misconduct of employees of Rockport, Lighthouse, or Four Seasons, after the events and to the present date, no employee of Rockport, Lighthouse, or Four Seasons has been disciplined, reprimanded, terminated, or otherwise subjected to discipline or training. The wrongful conduct was authorized by the policies of Rockport, Lighthouse and/or Four Seasons, and ratified by people serving in administrative, executive, and managerial positions for those defendants when the facts of the conduct were made known to them by Dean, internal review, and the litigation. The defendants each acted in concert with and

was the agent, employee, or other representative of the other defendants. The defendants each ratified or authorized the acts of the other defendants, and they have engaged in a conspiracy and common course of conduct.

In connection with the claim for professional negligence, the complaint additionally alleged the defendants had a duty to possess and diligently apply the degree of learning and skill ordinarily possessed by their peers. They also had a duty to disclose to Valerie the available choices of therapy and the dangers involved in each choice. They breached their duties, including failing to possess and use that degree of learning and skill ordinarily possessed by a reputable health care provider under similar circumstances in conducting each treatment provided to Valerie, including prescription of medication. They failed to use reasonable diligence and best judgment in the exercise of skill in conducting each treatment and in discharging Valerie. They failed to apply appropriate learning in conducting each treatment and discharging Valerie. They failed to inform her of the available choices of therapy and the dangers involved in each choice. And they violated a number of guidelines and rules governing medical providers. As a proximate result, Valerie and Dean were harmed. The actions of the defendants constituted despicable conduct that intentionally or recklessly ignored Valerie's requests related to her basic needs, entitling Dean to punitive damages as permitted by statute.

In connection with the negligence claim, the complaint additionally alleged that to the extent any of the defendants were not medical providers, they owed Valerie a duty of care based on:  ownership, possession, or control of the relevant facilities; a special relationship between the defendants as a business and Valerie as a patron; a duty to supervise, control, and protect patients at the relevant facilities; a duty to discharge patients in a way that did not cause harm to patients; and a duty to supervise, manage, and control their employees.  The defendants' conduct breached their duties, resulting in harm to Valerie and Dean.

The wrongful death cause of action incorporated by reference the allegations of professional negligence and negligence.  In addition, Dean alleged Valerie died as a result of the defendants' negligence or willful act in treating and caring for Valerie and as a result of their willful conduct in ignoring her basic needs, such as water and temperature control.  As a proximate result of their conduct, Valerie died and Dean suffered damages.

In connection with the claim for dependent abuse, the complaint alleged Valerie was a "dependent" within the meaning of Welfare and Institutions Code section 15657.  The defendants intentionally, or with a conscious or malicious disregard for the injurious and fatal consequences to Valerie, continually and for a prolonged period of time deprived her of basic necessities, such as food, water, and a reasonable temperature, within the meaning of "abuse" in section 15610.63 of the Welfare and Institutions Code.

9

Further, Lighthouse and Rockport intentionally, or with a conscious or malicious disregard for the injurious and fatal consequences to Valerie, ignored or refused to report to Valerie's attending physician the indications of Valerie's vital signs and temperature, the failure of which to treat led to her injury and death. Through the conduct described, the defendants engaged in "neglect," within the meaning of section 15610.57 of the Welfare and Institutions Code. As a proximate result, Valerie suffered general and special damages which the estate is entitled to recover. The estate is entitled to reasonable attorney fees as well.

## Motion for Summary Judgment and Supporting Evidence

Sherman Oaks filed a motion for summary judgment, which the trial court granted. On May 17, 2019, Rockport and Four Seasons filed a motion for summary judgment, or in the alternative summary adjudication. Rockport and Four Seasons argued that Dean lacked standing to pursue an action on behalf of Valerie's estate. He had not been appointed as personal representative of the estate, and he had argued in prior demurrer proceedings that he was not bringing the action as a successor in interest. In addition, there were no facts to support that the Four Seasons staff engaged in reckless, malicious, fraudulent or oppressive conduct directed at Valerie to support a cause of action for dependent elder abuse, or that an officer, director, or

10

managing agent of Four Seasons participated in, authorized, or ratified any wrongful conduct directed at Valerie. With respect to Dean's wrongful death claim, the care and treatment that Four Seasons' nurses and staff provided Valerie complied with the applicable standard of care, and no negligent act or failure to act by nurses or staff of Four Seasons caused or substantially contributed to Valerie's death. The complaint failed to present any triable issue of material fact against Rockport, because Rockport did not participate in the daily operations of Four Seasons or Lighthouse, and did not authorize, ratify, or direct any wrongful act by any employee of Four Seasons or Lighthouse. And there was no admissible evidence that an officer, director, or managing agent acted with malice oppression or fraud toward Valerie.

In support of the motion, they submitted the declaration of physician expert Karl Steinberg, M.D. Steinberg has been licensed to practice medicine since 1989. He is board certified in family medicine and in hospice and palliative medicine. He held several membership and leadership positions in organizations focused on geriatric care. He is currently the chief medical officer for a 20-facility skilled nursing facility management company. He has served as the medical director of skilled nursing facilities continuously since 1995.

He declared, "I am familiar with the standard of care required in skilled nursing facilities, as set forth by industry standards. I am also familiar with the California and

11

federal laws and regulations that govern the operation of skilled nursing facilities. [¶] Based on my years of education, training and experience, as well as my skill as a practicing internal and geriatric medicine physician in the Southern California community, I am familiar with, and understand, the requirements of the standard of care which must be met by nurses and staff providing care and treatment to patients like decedent as it existed in 2016." (*Sic.*)

Steinberg declared that to formulate his opinion, he reviewed Valerie's records from the defendant health care providers, Valerie's doctors, her death certificate, and the operative complaint. He noted that Valerie was admitted to Four Seasons on May 22, 2016, with a primary diagnosis of type 2 diabetes. Four Seasons staff documented in a "Change of Condition Report" that she had an elevated blood sugar level on June 7, 2016, and she was transferred to Sherman Oaks Hospital. She returned from the emergency room the same night with an order to take the antibiotic Keflex for seven days to treat a UTI. On June 14, 2016, Four Seasons staff reported that she continued to receive antibiotics for the UTI and was voiding freely with no pain or burning. Four Seasons staff prepared a new "Change of Condition Report" for her later on June 14 showing she was discharged to Sherman Oaks Hospital. She remained hospitalized until she was discharged to Lighthouse on June 23, 2016, and died on June 24, 2016.

Steinberg additionally declared, "Based on my review of the aforementioned records, as well as my extensive education, training and experience, it is my opinion that Four Seasons did not engage in any reckless, oppressive, fraudulent or malicious conduct toward decedent Valerie Donnell during her residency at Four Seasons. Further, it is my opinion that Four Seasons staff acted within the standard of care when providing care and treatment to decedent Valerie Donnell."

"I am of the opinion that the care and treatment rendered to decedent [by] the nursing staff of Four Seasons was at all times appropriate and complied with the applicable standard of care as it existed in 2016. The records confirm that the nurses performed appropriate and timely assessments of decedent during her residency at Four Seasons, and were responsive to her change(s) in condition. The records confirm that the nursing staff appropriately documented decedent's course and treatment during her residency. The nursing staff carried out all physician orders in a timely manner. I do not believe decedent required any additional nursing care beyond what is reflected in the chart."

"It is my expert opinion to a reasonable degree of medical probability that no alleged standard of care violation by Four Seasons was a substantial factor in causing or contributing to decedent's demise. Specifically the care provided by Four Seasons did not cause decedent's demise, and there is no causal connection between the care and

13

treatment provided by Four Seasons' staff and decedent's death."

Four Seasons and Rockport also submitted the declaration of Manny Pastor, who is the administrator at Four Seasons. He declared that the facility is licensed to operate as a skilled nursing facility. He is familiar with the state and federal regulations pertaining to facilities which provide skilled nursing services, including regulations for patient care, staffing and staff training. He was responsible for the management of the facility and daily operations, including resident grievances related to care, treatment, or service. All nursing personnel report to Pastor. He was never informed of any complaints made by Valerie, her family members, or anyone else regarding decedent's care or treatment. He was never informed of any complaints by any residents, family members or anyone else about inadequately training or "unfit" staff working at the Four Seasons during Valerie's residency. If there had been such complaints, Four Seasons policy required staff to notify Pastor. He was never informed by anyone that a Four Seasons employee deliberately declined to document the care, treatment, or service provided to Valerie, and if they did so, they were not authorized to act in that manner. Pastor did not provide any care to Valerie, but as administrator, he was generally familiar with the care and treatment provided to her and he reviewed her chart of her care and treatment at Four Seasons.

Defendants submitted Dumdumaya's declaration as well.  Dumdumaya is the general manager of Rockport, which is an administrative support services company. Rockport did not own, operate or manage Four Seasons or Lighthouse.  Rockport did not employ any of the individuals who provided administrative, operational or clinical oversight to Four Seasons or Lighthouse.  Rockport did not determine staff levels or budget for Four Seasons or Lighthouse.  Rockport was not responsible for any aspect of the daily management or operation of Four Seasons or Lighthouse at any time.  Dumdumaya's declaration submitted in support of the motion for summary judgment was unsigned at the time the motion was filed.  Four days later, on May 21, 2019, defendants filed a notice of errata explaining that Dumdumaya's declaration had omitted his signature and attaching a signed copy of the declaration.

In support of the motion for summary judgment, the defendants also submitted search results showing there was no record in the Los Angeles Superior Court of an appointment of Dean as personal representative for the estate.  They submitted Dean's opposition to demurrer in which he had asserted that he was not required to submit a declaration under Code of Civil Procedure section 377.32 as decedent's successor in interest, because the personal representative of the estate can pursue all claims that existed before and after the decedent's death without

15

submitting a declaration.[3]  Dean had stated in his opposition to the demurrer:  "Mr. Donnell, in his capacity as the personal representative of Ms. Donnell's estate, is *not* a successor in interest as defined in that article, he is (as the title states) the *personal representative* of the estate (i.e. executor)."  In addition, Dean asserted in his opposition to the demurrer that if he were proceeding as a successor in interest, the failure to file an affidavit was subject to cure, not grounds for dismissal.

## Opposition to Motion and Supporting Evidence

On July 18, 2019, Dean filed an opposition to the motion for summary judgment.  He argued that he had standing as an heir and as the personal representative of Valerie's estate, which was not required to have been probated.  He further argued that under Probate Code section 13500, the appointment of a personal representative for an estate that was not subject to probate did not require any court action.  In addition, if he lacked legal capacity to file a claim on behalf of the estate, it would be grounds for abeyance, not entry of an adverse judgment.

Dean provided his declaration stating that he is the sole heir and beneficiary of Valerie's estate.  He was bringing the estate's causes of action as Valerie's "successor in interest" and as a personal representative of her estate,

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

which was not a probate estate requiring court action to appoint a personal representative.

Dean also filed objections to the evidence submitted by Four Seasons and Rockport. He objected to the Dumdumaya's entire declaration on the grounds of "Relevance; competency; conclusory; legal conclusion; hearsay; foundation."

## Reply and Trial Court Ruling

Four Seasons and Rockport filed a reply. They argued that Dean could not show he was appointed as personal representative, and he had never attempted to obtain standing as the decedent's successor in interest pursuant to section 377.32. They also filed objections to Dean's evidence.

A hearing was held on the motion for summary adjudication on August 1, 2019. No reporter's transcript of the hearing has been included in the record on appeal. The minute order reflects that the trial court ruled on the parties' evidentiary objections, including the following pertinent rulings. The trial court overruled Dean's objection to Dumdumaya's declaration, finding the declaration was relevant, did not constitute an improper legal conclusion, and did not constitute inadmissible hearsay. The court sustained objections to Steinberg's declaration, on the ground that the medical records underlying Steinberg's expert opinion had not been authenticated.

The trial court sustained an objection to Dean's declaration that he was the sole beneficiary of Valerie's estate and bringing her survivor causes of action as her "successor in interest" and as a personal representative of her estate, which is not a probated estate that required a court to appoint a personal representative. The statements consisted of improper legal conclusions and lacked foundation. The court sustained an objection to his statement that Valerie was transferred to Sherman Oaks because she contracted a UTI at Four Seasons as a result of being left to sit in urine and bowel movements for extended periods of time. The court noted the statement was improper expert opinion, lacked foundation, and did not cite evidence to support his claims on causation. The court sustained the defendants' objection to Dean's statement that Valerie was rarely seen by anyone at Four Seasons for any reason, let along cleaning and hygiene, and there was insufficient staff to handle the patient volume at the facility. The court explained that the statement lacked foundation and Dean did not attest to how he knew this fact.

The court granted summary adjudication on the issue of standing, which resolved the causes of action brought by Dean purportedly on behalf of the estate. The court also granted the motion with respect to the wrongful death cause of action against Rockport, finding no triable issue of fact had been presented as to Rockport's involvement in the services rendered, which resolved all of the causes of action against Rockport. The trial court's tentative ruling was to

18

deny summary adjudication of the wrongful death cause of action due to the failure to authenticate the underlying medical charts, but ultimately, the court continued the hearing on the motion as to the cause of action for wrongful death against Four Seasons. The court allowed Four Seasons to submit further documentation regarding the cause of action on or before August 9, 2019, followed by an opportunity to submit responsive evidence and a reply. The court ordered a dismissal of Lighthouse.

## Continued Motion for Summary Judgment and Supporting Evidence

Four Seasons and Rockport filed briefing in the continued motion for summary judgment or in the alternative, summary adjudication on August 9, 2019, as to the cause of action for wrongful death. They argued that Valerie's treatment and care by the staff of Four Seasons complied with the applicable standard of care, and no act or failure to act by Four Seasons caused or substantially contributed to her death.

Four Seasons and Rockport again filed Steinberg's same declaration. They also attached a declaration from the custodian of records at Four Seasons that the records were a true copy of the Four Seasons chart pertaining to Valerie prepared in the ordinary course of business.

## Opposition to Continued Motion and Supporting Evidence

Dean opposed the continued motion for summary judgment on the grounds that Four Seasons and Rockport had failed to meet their burden, and there were triable issues of fact as to the pending cause of action against each. Dean additionally raised arguments about negligence per se and elder abuse.

Dean submitted a declaration in opposition to the motion for summary judgment. He also made the same objections to the defendants' evidence that he had previously raised prior to the continuation of the motion for summary judgment.

## Reply and Trial Court Ruling

In reply, Four Seasons and Rockport argued that the opposition was untimely, Steinberg's declaration was proper, and Dean had failed to submit an expert declaration to raise a triable issue of fact. They submitted objections to Dean's declaration. They also filed a reply to Dean's evidentiary objections.

A hearing was held on September 27, 2019. No reporter's transcript has been included in the record on appeal. The trial court found Steinberg's declaration was supported by authenticated records and the defendants had met their burden. Dean argued Steinberg's declaration was

irrelevant, because Dean was relying on a theory of negligence per se.  The court found Dean had not pled a negligence per se theory or any specific facts that should have alerted the defendants to address negligence per se.  In addition, the theory required a medical expert declaration to refute Steinberg's declaration that no negligent act caused Valerie's death.  Therefore, Dean failed to show a triable issue of fact and the motion was granted.

On October 4, 2019, the trial court entered an order finding there was no triable issue of fact.  Four Seasons and Rockport were entitled to summary adjudication on the issue of standing, because Dean had not been appointed by the court as personal representative of the decedent's estate, and therefore lacked standing to pursue causes of action on behalf of the estate.  Also, Rockport did not participate in the daily operations of Four Seasons or Lighthouse, and did not authorize, ratify, or direct any wrongful act by any employee of Four Seasons or Lighthouse.

On October 8, 2019, the trial court entered judgment in favor of Four Seasons and Rockport.  Dean filed a notice of appeal on December 4, 2019.

## DISCUSSION

### Standard of Review

"'[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of

21

material fact and that [it] is entitled to judgment as a matter of law.' (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*); accord, Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must make a prima facie showing either that the plaintiff cannot establish one or more elements of a cause of action or that there is a complete defense to the action. (*Aguilar*, at p. 850; Code Civ. Proc, § 437c, subds. (o), (p)(2).)  A defendant moving for summary judgment may satisfy this initial burden of production by presenting evidence that conclusively negates an element of the plaintiff's cause of action or by relying on the plaintiff's factually devoid discovery responses to show that the plaintiff does not possess, and cannot reasonably obtain, evidence to establish that element.  (*Aguilar*, at pp. 854–855.)  The opposing party has no obligation to show a triable issue of material fact exists unless and until the moving party has met its burden. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 743–744.)  If the defendant makes such a showing, the burden shifts to the plaintiff to present evidence showing there is a triable issue of material fact.  (*Aguilar*, at p. 850.)"  (*Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1119 (*Schmidt*).)

We conduct an independent review of a grant of summary judgment to determine whether triable issues of fact exist.  (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52 (*Duarte*).)  "In conducting our review, we must identify the issues to be considered on the motion for summary judgment, which are defined by the pleadings.

(*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)  Significantly, as to each claim as framed by the complaint, ""the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading.""  [Citation.]"  (*Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 661, italics and fn. omitted (*Good Samaritan*).)

"The evidence must be viewed in the light most favorable to the nonmoving party.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)  In deciding whether a material factual issue exists for trial, we 'consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence.' (Code Civ. Proc., § 437c, subd. (c).)  'Pursuant to the weight of authority, appellate courts review a trial court's rulings on evidentiary objections in summary judgment proceedings for abuse of discretion.  [Citations.]' (Eisenberg, Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2016) ¶ 8.168, pp. 8-146 to 8-147, italics omitted.)  The party challenging a trial court's evidentiary ruling has the 'burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason.  [Citation.]" (*Duarte, supra*, 13 Cal.App.5th at p. 52, fn. omitted.)

"If an expert provides an opinion in support of a motion for summary judgment, he or she must provide the facts upon which the expert's conclusions are based. ""[A]n

23

expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion *has no evidentiary value* because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]' [Citation.]'" (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 530, italics added.)" (*Good Samaritan*, *supra*, 23 Cal.App.5th at p. 662.)

"Because summary judgment is a drastic measure that deprives the losing party of a trial on the merits, summary judgment may not be granted unless it is clear there are no triable issues of material fact. (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304 (*Johnson*).)" (*McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938 (*McAlpine*).)

**Standing to Bring Claims of the Estate**

Four Seasons and Rockport contend that Dean lacks standing to bring a claim on behalf of Valerie's estate, because he has not been appointed by the court as the personal representative of the estate, denied that he was bringing the claims as Valerie's successor in interest, and never filed an affidavit as required under Code of Civil Procedure section 377.32 to pursue the claim as a successor in interest. Dean contends that he was not required to be appointed as the personal representative of the estate because he became the personal representative by operation of law as Valerie's surviving spouse, and in addition, he has standing as Valerie's successor in interest as the beneficiary

24

of her estate, even though he did not file a certificate under section 377.32. We conclude the trial court properly granted summary adjudication on the issue of standing to pursue the decedent's causes of action.

## A. Statutory Scheme Governing a Cause of Action Surviving Death

A cause of action that survives a person's death passes to the decedent's successor in interest, "and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." (§ 377.30.) The Law Revision Commission comment to section 377.30 explains in relevant part: "Under this section, an action or proceeding may be commenced by the decedent's successor in interest only if there is no personal representative. The distributee of the cause of action in probate is the successor in interest or, if there is no distribution, the heir, devisee, trustee, or other successor has the right to proceed under this article. See Section 377.11 ('decedent's successor in interest' defined). See also Prob. Code § 58 ('personal representative' defined). The addition of the reference to the successor in interest makes the rules applicable to commencement of an action consistent with the rules applicable to continuation of a pending action." (Cal. Law Revision Com. com., 22 West's Ann. Code Civ. Proc. (1992 ed.) foll. § 377.30, p. 931.)

25

A "personal representative," as defined by Probate Code section 58, subdivision (a), is an "executor, administrator, administrator with the will annexed, special administrator, successor personal representative, public administrator acting pursuant to Section 7660, or a person who performs substantially the same function under the law of another jurisdiction governing the person's status." (Prob. Code, § 58.)

A person has no power to administer an estate until appointed as the personal representative. (Prob. Code, § 8400, subd. (a).)[4] The appointment becomes effective when the person is issued letters by the court. (*Ibid*.) Appointment by the court is required even if the person is named as executor in the decedent's will, although a person named as executor can take certain actions to pay funeral costs and preserve the estate before the appointment becomes effective. (Prob. Code, § 8400, subd. (b).)

_____

[4] Probate Code section 8400 states: "(a) A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective. Appointment of a personal representative becomes effective when the person appointed is issued letters. [¶] (b) Subdivision (a) applies whether or not the person is named executor in the decedent's will, except that a person named executor in the decedent's will may, before the appointment is made or becomes effective, pay funeral expenses and take necessary measures for the maintenance and preservation of the estate." (Prob. Code, § 8400.)

26

In cases where there is no personal representative appointed, such as when administration of the estate is not required, California law allows the decedent's successor in interest to pursue the surviving cause of action. The "decedent's successor in interest" for the purposes of the survival statutes is "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." (§ 377.11.)

Under section 377.32, a person seeking to initiate or continue an action as the decedent's successor in interest must execute and file an affidavit or a declaration under penalty of perjury providing all of the following: the decedent's name; the date and place of death; a statement that no proceeding is pending for administration of the decedent's estate; if the estate was administered, a copy of the final order showing distribution of the cause of action to the successor in interest; a statement that the affiant is the decedent's successor in interest to the action as defined in section 377.11, or authorized to act on behalf of the decedent's successor in interest; and a statement that no other person has a superior right to commence the action or be substituted for the decedent in a pending action. (§ 377.32, subd. (a).)[5]

---

[5] Section 377.32, subdivision (a), provides that a person seeking to commence or continue an action as the decedent's successor in interest to execute and file an affidavit or a declaration under penalty of perjury stating all of the

We note that "The court in which an action is commenced or continued under this article may make any order concerning parties that is appropriate to ensure proper administration of justice in the case, including appointment of the decedent's successor in interest as a special administrator or guardian ad litem." (§ 377.33)  The Law Revision Commission comment to section 377.33 explains, "The court in which the action or proceeding is pending has authority to resolve questions concerning the proper parties to the litigation and to make conclusive and binding orders,

following:  "(1) The decedent's name.  [¶]  (2) The date and place of the decedent's death.  [¶]  (3) 'No proceeding is now pending in California for administration of the decedent's estate.'  [¶]  (4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest.  [¶] (5) Either of the following, as appropriate, with facts in support thereof:  [¶]  (A) 'The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding.'  [¶]  (B) 'The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding.'  [¶]  (6) 'No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.'  [¶]  (7) 'The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.'"  (§ 377.32, subd. (a).)

including determinations of the right of a successor in interest to commence or continue an action or proceeding. The references to appointment of the successor in interest as a special administrator or guardian ad litem are intended to recognize that there may be a need to impose fiduciary duties on the successor to protect the interests of other potential beneficiaries. See Code Civ. Proc. §§ 372–373.5 (guardian ad litem); Prob. Code §§ 8540–8547 (special administrator)." (Cal. Law. Revision Com. com., 22 West's Ann. Code of Civ. Proc. (1992 ed.) foll. Code of Civ. Proc., § 377.33, p. 933.)

## B. No Standing as Personal Representative

Dean's complaint alleged that he was bringing Valerie's surviving causes of action as the personal representative of his deceased wife's estate. In support of the motion for summary judgment, Four Seasons and Rockport submitted evidence that there was no record of Dean having been appointed by the court as the personal representative of Valerie's estate. This evidence was sufficient to shift the burden of proof to Dean to show a triable issue of fact on the issue of whether he was the estate's personal representative.

In response, Dean argued that he became the personal representative of the estate as the surviving spouse by operation of law under Probate Code section 13500. This is incorrect. Probate Code section 13500 provides, "Except as

29

provided in this chapter, when a spouse dies intestate leaving property that passes to the surviving spouse under Section 6401, or dies testate and by his or her will devises all or a part of his or her property to the surviving spouse, the property passes to the survivor subject to the provisions of Chapter 2 (commencing with Section 13540) and Chapter 3 (commencing with Section 13550), and no administration is necessary." (Prob. Code, § 13500.) Probate Code section 13500 provides for the succession of certain property to a surviving spouse without administration. It does not additionally appoint the surviving spouse to act in the capacity of personal representative of the estate. Nor is a surviving spouse who succeeds to property without administration encompassed in the definition of a personal representative under Probate Code section 58. Dean has not provided any authority to support that a surviving spouse becomes the personal representative of the deceased spouse's estate by operation of law without appointment. The trial court properly found Dean failed to raise a triable issue of fact as to whether he was the personal representative of the estate for purposes of standing, and therefore, summary judgment was properly entered as to the causes of action brought on behalf of the estate.

### C. Other Standing Arguments

Dean contends that even if he did not have standing as the personal representative of the estate, he had standing as

Valerie's successor in interest, and his failure to file an affidavit under section 377.32 to commence an action as the decedent's successor in interest was subject solely to a plea in abatement.  We disagree.

The complaint alleged that Dean was the personal representative of the estate; it did not allege that he was bringing the action as the decedent's successor in interest. "'The pleadings delimit the issues to be considered on a motion for summary judgment.  [Citation.]' (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 891 (*Turner*).)  Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98–99, fn. 4.)  'To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings.  [Citation.]  If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.  [Citations.]' (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264–1265.)  '[T]he pleadings "delimit the scope of the issues" to be determined and "[t]he complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action." [Citation.]  [Plaintiff's] separate statement of material facts is not a substitute for an amendment of the complaint.  [Citation.]' (*Lackner v. North* (2006) 135

Cal.App.4th 1188, 1201–1202, fn. 5 (*Lackner*).)" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

At no time did Dean seek leave to amend to allege that he was the decedent's successor in interest, even after the issue of standing was raised on demurrer. In fact, in opposition to demurrer, Dean expressly denied that he was pursuing the action as the decedent's successor in interest or that an affidavit under section 377.32 was required of him. Four Seasons and Rockport needed only to address the allegations of the complaint in their motion for summary judgment. Dean could not raise an argument that he had standing as the decedent's successor in interest for the first time in opposition to the motion, without having sought leave to amend the complaint.

Even were we to conclude the allegations of the complaint were sufficient to raise the issue of standing as a successor in interest and Dean's evidence established a triable issue of fact that Valerie's causes of action passed to him, he did not file the affidavit required under section 377.32 to commence or continue an action as the successor in interest. The trial court properly found there was no triable issue of fact as to standing. Dean relies on dicta in *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1523–1524 (*Parsons*), to argue that failing to file an affidavit under section 377.32 results in suspension of the action, not dismissal, but *Parsons* is distinguishable. The plaintiff in *Parsons* filed her complaint before statutory provisions were enacted to authorize an action by a decedent's successor in interest.

32

When defendants filed a demurrer on the ground that she lacked capacity because she was not the personal administrator of the estate, she advised the trial court that she would comply with the newly-enacted provision by filing an affidavit as decedent's successor in interest. The *Parsons* court held that the survival provisions applied retroactively to permit the decedent's successor in interest to file an action where there was no personal representative, and filing an affidavit under section 377.32 was not a condition precedent to filing an action as the decedent's successor in interest. In dicta, the court added that "failure to file the affidavit could possibly subject the action to a plea in abatement." (*Id*. at p. 1524.) The court's holding does not apply to a case where the plaintiff alleged that he was bringing the action as the personal representative of the estate, not as the successor in interest and without filing an affidavit to pursue the action as decedent's successor in interest, in the context of a dispositive summary judgment motion.

In this case, Dean did not establish standing to pursue the action as decedent's successor in interest in the absence of the required affidavit. He did not allege, and even expressly denied, that he was bringing the action as the decedent's successor in interest. He did not request any remedial action at any time: he did not request leave to amend the complaint to allege standing as the decedent's successor in interest, did not submit a proposed affidavit in opposition to summary judgment, and did not request a continuance to file the required affidavit. Unlike in *Parsons*,

there are no facts in this record which indicate Dean made a good faith effort to comply with the relevant statutory requirements. (Compare *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 19–21 [party was allowed to amend the complaint to substitute newly appointed administratrix as real party in interest for plaintiff who lacked standing] with *Coats v K-Mart Corp.* (1989) 215 Cal.App.3d 961, 964–967 [plaintiff who alleged she was the decedent's administratrix, but did not actually seek appointment as administratrix until several years later and did not request leave to amend or take any other remedial action after appointment, did not have standing].) In the context of the summary judgment proceedings, the trial court properly found Dean had not met his burden to demonstrate a triable issue of fact regarding his standing to assert claims on behalf of Valerie's estate. The sole remaining cause of action was Dean's individual wrongful death claim.

## Dumdumaya Declaration

In support of the motion for summary judgment, Rockport submitted Dumdumaya's declaration stating that Rockport was not responsible for operations at Four Seasons or Lighthouse. Dean contends the trial court should have excluded Dumdumaya's declaration on the grounds of hearsay and foundation, because the original declaration was not signed and the notice of errata filed four days later on May 21, 2019, providing Dumdumaya's signature was

34

untimely with respect to the August 1, 2019 hearing on the motion for summary judgment.

Dean did not object in the trial court that the corrected declaration was untimely, and therefore, he has waived the objection. (§ 437c, subd. (d); *Snoke v. Bolen* (1991) 235 Cal.App.3d 1427, 1430, fn. 2.) Even were we to find his objection has been preserved, the trial court did not abuse its discretion by allowing Rockport to cure the signature defect in the declaration.

A declaration is a writing that is signed, dated, and certified as true under penalty of perjury. (§ 2015.5; *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 606 (*Kulshrestha*).) Section 2015.5 requires an unsworn declaration to be subscribed by the declarant. (§ 2015.5; *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1222–1223.) All of the statutory conditions must appear on the face of the declaration for compliance with section 2015.5 to be considered substantial and sufficient. (*Kulshrestha, supra*, 33 Cal.4th at p. 612.) A declaration that fails to comply with the requirements of section 2015.5 cannot be used as an evidentiary document to support or oppose a summary judgment motion. (*Id.* at pp. 606, 619.)

However, "California appellate courts have held that a pleading may be amended for the purpose of curing a signature defect. In *United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915, the California Supreme Court ruled that failure to verify a

35

pleading, where the verification is required by statute, 'is a mere defect curable by amendment.' Moreover, '[a]mendments may cure such a defect even when submitted after the statute of limitations has run on the time to file the original complaint, since verification of a complaint is not a jurisdictional requirement.' (*Ibid.*; see also *Perlman v. Municipal Court* (1979) 99 Cal.App.3d 568, 574 [failure to verify a writ petition is a procedural defect that may be cured by amendment].)" (*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163–1164.)

We review the trial court's evidentiary rulings in connection with summary judgment for abuse of discretion. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.) The trial court did not abuse its discretion by allowing Rockport to correct Dumdumaya's declaration by submitting a signed copy. The signed copy was filed within four days of the motion, before Dean filed an opposition to the motion and without causing any prejudice to Dean. (Compare *Kulshrestha, supra*, 33 Cal.4th at pp. 607–608 [plaintiff did not try to submit corrected declarations until after the trial court had heard and ruled on the motion] with *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1527–1528 [finding trial court should have permitted party to cure defect in attorney's declaration when attorney offered to do so at oral argument].) No abuse of discretion has been shown. Dumdumaya's declaration was sufficient to shift the burden of proof to Dean to show triable issues of fact as to Rockport's liability for Valerie's

36

injuries, which Dean did not submit.  The trial court properly granted summary judgment of Dean's wrongful death claim against Rockport based on the failure to show Rockport was liable for the conduct at issue.  The lack of evidence of Rockport's liability serves as an additional basis for granting summary judgment of the estate's claims against Rockport as well.

## **Wrongful Death**

Dean contends summary adjudication of the wrongful death claim that he alleged on his own behalf based on ordinary negligence and professional negligence should have been denied, because Four Seasons failed to submit evidence that conclusively negated an element of his claim.  We agree that the evidence Four Seasons submitted in support of summary judgment was too conclusory to address the allegations of the complaint, and therefore, summary adjudication must be denied.

"The elements of a cause of action for wrongful death are a tort, such as negligence, and resulting death.  (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 806.)" (*Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 685 (*Lopez*).)  "Generally 'negligence' is the failure "'to exercise the care a person of ordinary prudence would exercise under the circumstances.'"  [Citation.]" (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31 (*Delaney*).)  "The elements of a negligence cause of action are duty to use due care and breach of duty,

37

which proximately causes injury.  (*Holmes v. Summer* (2010) 188 Cal.App.4th 1510, 1528.)"  (*Lopez, supra*, 196 Cal.App.4th at p. 685.)

"'Professional negligence' is one type of negligence, to which general negligence principles apply.  'With respect to professionals, their specialized education and training do not serve to impose an increased duty of care but rather are considered additional "circumstances" relevant to an overall assessment of what constitutes "ordinary prudence" in a particular situation.  Thus, the standard for professionals is articulated in terms of exercising "the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing . . . .'" [Citation.]"  (*Delaney, supra*, 20 Cal.4th at p. 31.)

"The elements of a cause of action for medical malpractice are:  (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.  (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606.)"  (*Johnson, supra*, 143 Cal.App.4th at p. 305.)

"Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' (*Sinz v. Owens* (1949) 33 Cal.2d 749, 753), expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson.  (*Kelley v. Trunk*

(1998) 66 Cal.App.4th 519, 523.)  However, the expert testimony must be based on such matters as may be reasonably relied upon by an expert in forming an opinion on the subject.  (*Ibid.*)"  (*Johnson, supra*, 143 Cal.App.4th at p. 305.)

"The law is clear that [the] moving party's burden . . . cannot be satisfied by an expert declaration consisting of ultimate facts and conclusions that are unsupported by factual detail and reasoned explanation, even if it is admitted and unopposed."  (*Good Samaritan, supra*, 23 Cal.App.5th at p. 657.)  " " " "[B]ecause an expert opinion is worth no more than the reasons and facts on which it is based,' " " " an expert opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value.  (*Id.* at p. 662.)

Although the complaint is not a model of clarity, the gravamen of Dean's wrongful death claim based on ordinary negligence and professional negligence is that Four Seasons was understaffed and did not attend to Valerie's hygiene needs, in violation of unspecified statutes and regulations governing skilled nursing care facilities.  The key allegations were that Valerie reported to staff that she needed to use the bathroom and was too hot.  Employees intentionally refused to assist her with using the bathroom or to change the temperature in the room.  She was left sitting in excrement in extreme heat for extended periods of time.  Dean and Valerie both repeatedly complained about Valerie's hygiene care needs.  Four Seasons failed to implement policies to

check on patients to care for hygiene and temperature control, and they understaffed the facility to reduce overhead costs.  Dean further alleged that as a result of Four Seasons' breach of its duty of care related to use of the bathroom, Valerie contracted a UTI, which was a substantial factor in the chain of events leading to her ultimate death.

In the motion for summary judgment, Four Seasons sought to show through Steinberg's declaration that Valerie's care and treatment were within the standard of care for skilled nursing facilities.  However, Steinberg's declaration amounted to little more than a bare statement that Valerie's treatment was within the standard of care.  He did not elaborate or explain how her treatment was within the standard of care with respect to hygiene and bathroom assistance.  Steinberg did not summarize any care from Valerie's charts related to assisting her with using the bathroom, changing soiled linens, or responding to hygiene and temperature control needs.  He simply makes conclusory statements that the care and treatment rendered by the nursing staff of Four Seasons was appropriate, complied with the applicable standard of care, records reflect the nurses performed appropriate and timely assessments, appropriately documented her course and treatment during her residency, and were responsive to the changes in her medical condition.  He does not state the standard of care for skilled nursing facility staff with any specificity with respect to a resident's hygiene needs or how Four Seasons met the standard in the area of hygiene.  There was no information

about the staffing level necessary to meet the standard of care or the staffing level at Four Seasons in particular. Steinberg's declaration, which was the sole evidence on the issue of breach of a duty of care, was not sufficient to address the allegations of the complaint and show that Dean could not establish an element of his claim.

"In *Good Samaritan*, the Court of Appeal held that summary judgment should not have been granted on a minor's claim that a hospital was negligent in housing him with a roommate who sodomized him. (*Good Samaritan, supra,* 23 Cal.App.5th at pp. 656–657.) In support of a motion for summary judgment, the hospital lodged an unrebutted expert declaration from a nurse stating, based on a review of the hospital's records, that the hospital's conduct met the standard of care at all times during the care and treatment of the minor. (*Id.* at pp. 659–660, 665.) In reversing the judgment, the appellate court concluded that the expert's declaration was legally insufficient to shift the burden to the plaintiff to show a triable issue of material fact because it was conclusory and lacked any meaningful explanation of the applicable standard of care and the conduct required to meet it. (*Id.* at pp. 656, 664–665.) In reaching this conclusion, the Court of Appeal cited *Kelley v. Trunk* (1998) 66 Cal.App.4th 519 (*Kelley*) and *Johnson, supra,* 143 Cal.App.4th 297. (*Good Samaritan*, at pp. 663–664.)" (*McAlpine, supra,* 51 Cal.App.5th at p. 939.)

"In *Kelley*, a patient sued physicians, alleging that he suffered neurological damage and other injuries as a result

41

of negligent medical care after being treated for a laceration on his arm. (*Kelley, supra*, 66 Cal.App.4th at p. 521.) The defendants moved for summary judgment, submitting the expert declaration of another doctor who, after reviewing the medical records and relating the patient's treatment, stated that "'[a]t all times [the treating physician] acted appropriately and within the standard of care under the circumstances presented.'" (*Id*. at p. 522.) The expert 'did not further elaborate upon or explain the basis for his opinion.' (*Ibid*.) The trial court granted summary judgment, but the Court of Appeal reversed. (*Id*. at pp. 523, 525.) Even though the expert's declaration was admitted into evidence due to the plaintiff's failure to object (*id*. at p. 524), the appellate court held that the standard for summary judgment is 'not satisfied by laconic expert declarations which provide only an ultimate opinion, unsupported by reasoned explanation.' (*Id*. at p. 525.)" (*McAlpine, supra*, 51 Cal.App.5th at pp. 939–940.)

"[The appellate court] followed the reasoning of *Kelley* in *Johnson, supra*, 143 Cal.App.4th 297. In *Johnson*, a patient sued his physicians for malpractice, alleging that he was injured by excessive use of radiation during his treatment for prostate cancer. (*Id*. at pp. 299–300, 306.) The physicians moved for summary judgment, relying on a conclusory expert declaration stating that what was done was within the standard of care. (*Id*. at p. 306.) The trial court granted summary judgment because it found the plaintiff's competing expert declaration inadequate. (*Id*. at

42

p. 299.)  [¶]  We held that the bare conclusion of the defendants' expert, unsupported by reasons or explanations, was insufficient to show the defendants acted within the standard of care.  (*Johnson*, *supra*, 143 Cal.App.4th at pp. 305, 307; see also *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135 [value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed].)  Since a patient could be harmed by receiving too much radiation, an expert opinion that does not set forth the standard for determining a safe amount of radiation is legally insufficient to show the standard of care was met.  (*Johnson*, *supra*, at p. 308.)  And because the defendants did not meet their initial burden of production, they were not entitled to summary judgment, regardless of the adequacy of the plaintiff's opposition.  (*Id.* at pp. 305, 308.)  We reach the same conclusion here." (*McAlpine*, *supra*, 51 Cal.App.5th at p. 940.)

Four Seasons' evidence was insufficient to show that Dean could not establish an element of his individual claim for wrongful death. Since Four Seasons did not meet its initial burden of proof, Dean was not required to demonstrate the existence of a triable issue of fact and judgment must be reversed on Dean's individual wrongful death claim.

43

## Discovery Ruling

Dean contends the trial court erred by granting motions to compel further discovery requests against Dean in his individual and representative capacities, because the discovery requests were made solely to Dean in his representative capacity and the motions to compel further responses were untimely. On appeal, Four Seasons and Rockport have not addressed the proper parties to the discovery proceedings or the timeliness of the motions to compel further responses. On the record presented, we conclude Dean is correct.

### A. Additional Facts

In January 2019, Four Seasons and Rockport each served a request for production of documents directed to Dean in his representative capacity for the estate, not his individual capacity. They each served a request for responses to form interrogatories directed to Dean without specifying his capacity. They also served requests for responses to special interrogatories expressly directed to Dean in his capacity as representative for the estate, not his individual capacity.

When responses were not received, Four Seasons and Rockport reserved a hearing date for a motion to compel discovery. Dean served verified responses to the discovery on April 16, 2019. Four Seasons and Rockport considered

44

the responses deficient and notified Dean that they would file motions to compel further responses.

Four Seasons and Rockport attempted to coordinate an informal discovery conference through email as required by the presiding judge. No response was received from Dean's counsel. When they reserved a date for the informal discovery conference, the court clerk advised counsel that the deadline to file motions to compel was extended to the date of the information discovery conference. The notice of the information discovery conference stated the same. An informal discovery conference was held on June 14, 2019. There was no appearance for Dean. The trial court found the moving parties had complied with the obligations for the informal discovery conference and could file a motion to compel.

On June 18, 2019, Four Seasons and Rockport each filed a motion to compel further responses to requests for production of documents from Dean in his individual capacity and as the representative for the Valerie's estate. That same day, Four Seasons and Rockport each filed motions to compel further responses to form interrogatories and motions to compel further responses to special interrogatories from Dean in his individual capacity as well as his representative capacity. Each motion to compel further discovery responses requested monetary sanctions of $2,860 against Dean in his individual capacity and as the representative of Valerie's estate, as well as against his attorney.

Dean opposed the motions on several grounds, including that the motions were untimely and not accompanied by separate statements. On July 17, 2019, Four Seasons and Rockport filed a notice of continued hearing on the motions to compel further discovery responses. At the same time, they filed amended motions to compel further discovery responses with separate statements.

A hearing was held on August 8, 2019, on the motions to compel further discovery. No reporter's transcript has been included in the appellate record on appeal. The minute order reflects that the trial court found the requests for further responses were proper and granted the motions. The trial court found a reduced award of monetary sanctions in the amount of $1,100 was reasonable, in light of the failure to include a separate statement with the original motions.

### B. Analysis

Unless notice of a motion to compel further responses to interrogatories or a motion to compel further production of documents is given within 45 days of service of the verified response to the discovery request, or a specific later date to which the parties have agreed in writing, the propounding party waives any right to compel a further response to the interrogatories. (§§ 2030.300, subd. (c), 2031.310, subd. (c).)

Compliance with the 45 day time for notice of a motion to compel further responses to interrogatories or production

of documents is not jurisdictional in the fundamental sense, but is jurisdictional in that "it renders the court without authority to rule on motions to compel other than to deny them." (*Sexton v. Superior Court* (1997) 58 Cal.App.4th 1403, 1410, fn. omitted.) Failure to timely move to compel within the specified period constitutes a waiver of any right to compel a further response. (*Ibid.*)

In this case, Dean contends the original discovery motions were directed to him in his representative capacity for the estate, not his individual capacity, and therefore, motions to compel further responses could not be granted against him in his individual capacity. We agree with Dean that the discovery motions served by Four Seasons and Rockport in January 2019, were directed to Dean in his purported representative capacity for the estate, and therefore, motions to compel further responses could not be granted against Dean in his capacity as an individual plaintiff.

In addition, the motions to compel further responses from Dean as the purported representative of the estate were filed outside the time limit permitted under the discovery statute. Although Four Seasons and Rockport may have acted with substantial justification in filing motions to compel further responses as directed by the court, based on the record on appeal, the trial court lacked jurisdiction to grant the motions. The order granting the motions to compel further responses must be reversed.

47

**DISPOSITION**

The judgment, the order granting summary adjudication, and the order granting the motion to compel further discovery responses are reversed. The trial court is directed to enter a new and different order denying summary adjudication as to Dean Donnell's individual cause of action for wrongful death against Four Seasons, and otherwise granting the motion for summary adjudication of the remaining issues against Four Seasons and Rockport. The trial court is also directed to enter a new and different judgment in favor of Rockport. The parties are to bear their own costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.